# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TERESSA JANETTE GALLEGOS,
Individually and as Personal Representative
of the ESTATE OF JOSEPH ORAN WINKLE,
Deceased; and MARY ANN VAN WINKLE,

      Plaintiffs,

vs.                                           No. CIV 13-1055 JB/KBM

MAUREEN WOOD, M.D.,
MEDICAL DOCTOR ASSOCIATES, LLC;
and the UNITED STATES OF AMERICA,

      Defendants.

consolidated with

TERESSA JANETTE GALLEGOS,
Individually and as Personal Representative
of the ESTATE OF JOSEPH ORAN VAN WINKLE,
Deceased; and MARY ANN VAN WINKLE,

      Plaintiffs,

vs.                                           No. CIV 15-0187 JB/KBM

MAUREEN WOOD, M.D.,
and the UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

---

[1] The Court earlier entered two Orders.  The first Order, filed September 17, 2015 (Doc. 69)("First Order"), granted Defendant United States of America's Motion for Extension of Time to File Reply, filed November 18, 2014 (Doc. 59).  The Court stated that it might "at a later date issue a memorandum opinion more fully detailing its rationale for this decision."  First Order at 1 n.1.  The second Order, filed September 23, 2015 (Doc. 70)("Second Order"), denied Defendant United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed October 17, 2014 (Doc. 52).  The Court stated that it would "at a later date issue a memorandum opinion more fully detailing its rationale for this decision."  Second Order at 1 n.1.  This Memorandum Opinion and Order is the promised opinion for both Orders.

**THIS MATTER** comes before the Court on Defendant United States of America's Motion for Extension of Time to File Reply, filed November 18, 2014 (Doc. 59)("Motion for Extension") and Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed October 17, 2014 (Doc. 52)("Motion").  The Court held a hearing on December 18, 2014.  The primary issues are: (i) whether the Court should excuse the United States' late filing of its Reply to Response of Defendants Maureen Wood, M.D. ("Dr. Wood") and Medical Doctor Associates, LLC ("Medical Associates"); and (ii) whether Plaintiffs Teressa Janette Gallegos[2] and Mary Ann Van Winkle exhausted their administrative remedies as the Federal Tort Claims Act of 1946, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), requires.  To decide the second issue, the Court must determine: (i) whether Defendant Dr. Wood's employment status is relevant to the present motion; (ii) whether the Plaintiffs' Letter from Doug Perrin to the Department of Veterans Affairs ("VA") (dated April 2, 2013), filed October 17, 2014 (Doc. 55-2)("April 2 Letter"), provided sufficient notice of their allegations; (iii) whether the Plaintiffs' Letter from Doug Perrin to Bonita Ortiz, Representational Paralegal (dated December 2, 2013), filed October 17, 2014 (Doc. 52-4)("December 2 Letter"), was a separate notice of claim in spite of the Plaintiffs' assertion that it was an "amendment" or "supplement"; and (iv) whether the Plaintiffs' Letter from Doug Perrin to General Counsel, Department of Veterans Affairs (dated April 23, 2014), filed October 17, 2014 (Doc. 52-8)("Final Letter"), provided sufficient notice of their allegations against Dr. Christopher Quinatana, M.D. ("Dr. Quintana").

The Court will grant the Motion for Extension for two reasons.  First, the United States' late filing of its Reply to Response of Defendants Maureen Wood, M.D. ("Dr. Wood") and

---

[2]Joseph Oran Van Winkle was involved in this dispute before his death on September 10, 2013.  His daughter, Plaintiff Teressa Janette Gallegos, is now the personal representative for his estate.

Medical Associates was "excusable neglect" within the meaning of rule 6(b) of the Federal Rules of Civil Procedure.  Second, the delay did not prejudice any party.

The Court will deny the United States' Motion for three reasons.  First, the Court concludes that Dr. Wood's employment status does not control the outcome of the Motion, because the Plaintiffs no longer make claims against the United States based on Dr. Wood's conduct.  Second, the Court concludes that the Plaintiffs' April 2 Letter provided sufficient notice of their allegations before the Court because the April 2 Letter and the present litigation both focus on a single incident and the VA investigated its personnel's possible negligence.  Third, the Plaintiffs' descriptions of the December 2 Letter did not prevent that Letter from providing adequate and timely notice of the Plaintiffs' claims.  Although the Plaintiffs' Final Letter failed to provide sufficient notice of the Plaintiffs' allegations against Dr. Quintana because the Plaintiffs did not wait for the required period before filing suit, this problem is not fatal to Plaintiffs' claims.  The Court will thus deny the United States' Motion.

## FACTUAL BACKGROUND

The Court takes its facts from the Plaintiffs' First Amended Complaint for Wrongful Death Damages due to Medical Malpractice, filed June 30, 2014 (Doc. 41)("Amended Complaint") and the April 2 Letter.[3]  It accepts as true all non-conclusory factual statements in these two sources.

### 1.     The Alleged Medical Malpractice.

On May 7, 2012, Joseph Oran Van Winkle ("Van Winkle") sought treatment for abdominal pain at the Raymond G. Murphy Veterans Affairs Medical Center's Emergency

---

[3]The Court draws on the Plaintiffs' letters for its facts because the Complaint omits certain essential background information, such as a description of the June 12, 2012 meeting between Van Winkle and the VA.  See April 2 Letter at 2.

Department in Albuquerque, New Mexico.  See Amended Complaint ¶ 3, at 2.  Dr. Wood, an internal medicine specialist, diagnosed Van Winkle with septic shock[4] and admitted him to the hospital's intensive care unit.  See Amended Complaint ¶ 6, at 2.  Dr. Wood's medical notes state that she administered two separate intravenous antibiotics,[5] but Van Winkle never received either drug and pharmacy records show that one of the drugs was never ordered.  See April 2 Letter at 1; Amended Complaint ¶ 12, at 4.

On May 8, 2012, two of Van Winkle's blood cultures tested positive for Staphylococcus aureus.[6]  See Amended Complaint ¶ 6, at 2.  The laboratory report included a list of antibiotics that could effectively treat Staphylococcus aureus.  See Amended Complaint ¶ 6, at 2.  Dr. Wood's progress note from the same day concludes that the result of the blood culture was a "false positive."  Amended Complaint ¶ 6, at 3.  She chose to use the antibiotic Cefepime[7] which

---

[4]Sepsis occurs when chemicals released into the bloodstream to fight an infection trigger widespread inflammatory responses.  If left untreated, sepsis can lead to septic shock, a form of severe sepsis that can cause extraordinarily low blood pressure, organ damage, and death.  See Diseases and Conditions: Sepsis, MAYO CLINIC (Jul. 23, 2014), http://www.mayoclinic.org/diseases-conditions/sepsis/basics/definition/con-20031900 ("Mayo Clinic on Sepsis").

[5]Antibiotics are powerful medicines that fight bacterial infections, either by killing bacteria or preventing them from reproducing.  Different antibiotics are effective against different bacteria.  See Antibiotics, MEDLINE PLUS, U.S. NATIONAL LIBRARY OF MEDICINE, https://www.nlm.nih.gov/medlineplus/antibiotics.html ("Mayo Clinic on Sepsis").

[6]Staphylococcus aureus, more commonly known as "staph," is a common type of gram positive bacteria present in thirty percent of healthy individuals.  Although it is normally harmless, it can lead to dangerous infections -- particularly in hospital settings or immunocompromised patients.  Serious complications from staph infections include septic shock.  See Mayo Clinic on Sepsis.

[7]Cefepime is a type of cephalosporin antibiotic.  Cefepime injections are used to treat bacterial infections throughout the body.  See Drugs and Supplements: Cefepime, MAYO CLINIC (July 1, 2015), http://www.mayoclinic.org/drugs-supplements/cefepime-injection-route/before-using/drg-20073408.

was not on the laboratory report's list and is ineffective against Staphylococcus aureus.   See Amended Complaint ¶¶ 4-7, at 2-3.   The Plaintiffs also state that (i) Dr. Wood's notes contain a statement of intent to change the Cefepime to Clindamycin, but the switch "was never ordered or administered"; and (ii) the use of Cefepime did not begin until May 13, 2012, five days after Dr. Wood ordered it.   Complaint ¶ 7, at 3.   "[N]either Ancef [Cefepime] nor Clindamycin . . . would have safeguarded Mr. Van Winkle" from his infection.   Complaint ¶ 7, at 3.

Two other individuals were involved in Van Winkle's care.   An unnamed VA pharmacist or representative of the pharmacy department (the "unnamed pharmacist") allegedly "accompanied Dr. Wood on her rounds of patients every day."   Amended Complaint ¶ 8, at 3. Dr. Christopher Quintana, a fellow[8] assigned to Dr. Wood, assisted her in her treatment of Van Winkle.   Amended Complaint ¶ 9, at 3.   Dr. Quintana received direct notice from the laboratory that Van Winkle's urine, as well as her blood, had tested positive for Staphylococcus aureus. Amended Complaint ¶ 9, at 3.

The VA discharged Van Winkle on May 13, 2012.   Dr. Wood incorrectly explained in her discharge summary that his "shock resolved on the fourth day of the hospital course." Amended Complaint ¶ 11, at 3.   Van Winkle's condition continued to deteriorate after his discharge.   On about June 5, 2012, he was admitted to the Artesia General Hospital in Artesia, New Mexico, with dehydration and a continued infection.   See Amended Complaint ¶ 13, at 4. His treating physician in Artesia, Dr. Jorge Abalos, ordered him to return to the VA.   See Amended Complaint ¶ 13, at 4.

---

[8]A fellowship is a postgraduate training period for physicians attempting to enter a particular subspecialty.  Aspiring heart surgeons, for example, may spend a year focused on mitral valve repair.  See How to pursue a postgraduate fellowship, BRITISH MEDICAL JOURNAL (Oct. 31, 2012), http://goo.gl/wS8i7m.

On June 12, 2012, physicians at the VA diagnosed Van Winkle with severe right-sided endocarditis.[9]  The infection resulted in bacterial growth on one of Van Winkle's heart valves and severe damage to his circulatory system.  See Amended Complaint ¶ 14, at 4.

The VA held a meeting with Van Winkle, his wife, and his daughter the same day.  See Amended Complaint ¶ 15, at 4; April 2 Letter at 2.  The VA informed the family that a panel reviewing Van Winkle's medical records had concluded that Dr. Wood's course of oral antibiotics was "not adequate or appropriate to treat his infection and that he should have been given intravenous antibiotics for four to six weeks."  Amended Complaint ¶ 15, at 4.  The panel further found that the growth on Van Winkle's tricuspid valve resulted from this failure to provide Van Winkle with appropriate antibiotics.  See Amended Complaint ¶ 15, at 4.

Van Winkle died on September 10, 2013.  See Amended Complaint ¶ 16, at 4.  His daughter, Teressa Janette Gallegos, has since become the Personal Representative of his Estate. See Amended Complaint ¶ 16, at 4.

### 2.    Correspondence and Notices of Claims.

On April 2, 2013, the Plaintiffs mailed a "Tort Claim" letter to the Office of Regional Counsel of the Department of Veterans Affairs.  See April 2 Letter.  The April 2 Letter explains that the underlying events began on May 7, 2012.  See April 2 Letter at 1.  It describes the course of treatment and the nature and the extent of the injury, and includes a demand for $600,000.00. See April 2 Letter at 1-3.  The letter focuses on Dr. Wood's conduct, explaining: "What should have been treated simply and effectively turned into a very complex, dangerous situation, as a

---

[9]Endocarditis is an infection of the heart's inner lining that occurs when bacteria from other parts of the body enter the bloodstream and settle in the heart.  Endocarditis can damage or destroy heart valves and lead to life-threatening complications.  See Diseases and Conditions: Endocarditis, MAYO CLINIC (Jul. 14, 2014), http://www.mayoclinic.org/diseases-conditions/endocarditis/basics/definition/con-20022403.

result of the negligence of Dr. Wood in misdiagnosis, resulting in improper and inadequate treatment." April 2 Letter at 3. It makes one reference to unidentified "multiple physicians who followed Mr. Van Winkle." April 2 Letter at 2. It uses passive voice, however, to avoid attributing actions to specific individuals. See April 2 Letter at 2-3 ("Zosyn was never ordered nor administrated . . . ."); id. ("Mr. Van Winkle was discharged . . . ."); id. ("Upon discharge, Mr. Van Winkle was given . . . ."). It also includes a list of "witnesses," including Van Winkle's family and over one hundred medical providers who could have been involved in Van Winkle's care. See April 2 Letter at 4 ("Exhibit A"). The list of medical providers includes "Chris Quintana" and at least one pharmacist. Exhibit A at 1.

The VA's Office of Regional Counsel replied to this initial claim on June 19, 2013. See Letter from Melinda Frick, Regional Counsel, to Doug Perrin (dated June 19, 2013), filed October 17, 2014 (Doc. 52-3)("First VA Letter"). The letter states that: "Your clients allege Mr. Van Winkle suffered injury as a result of multiple acts of negligence by Dr. Maureen Wood on or about May 2012." First VA Letter at 1. It denies the claim on multiple grounds. First, it asserts that the FTCA provides compensation "when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission." First VA Letter at 1. It notes that Dr. Wood was an "independent contract physician" and an employee of a separate company, Medical Associates. First VA Letter at 1.

Second, the letter explains that the VA investigated whether Van Winkle "received good care from his other VA-employed providers." First VA Letter at 1. Its investigation included "a review of [his] medical records; a review of his claim by three physicians in three different medical specialties in three different parts of the country who acted as reviewing experts; and interviews of medical personnel." First VA Letter at 1. The investigation concluded that "there

was nothing VA employees acting in the course and scope of their employment . . . did or failed to do that caused any injury to Mr. Van Winkle." First VA Letter at 1-2.

The Plaintiffs[10] replied to the VA's First Letter on December 2, 2013. See December 2 Letter at 1. The December 2 Letter recites that it was "written to supplement [the April 2] letter," attaches the earlier letter, and incorporates it by reference. December 2 Letter at 1. It states:

> We have learned since the April 2, 2013 letter was written, that a pharmacist or representative of the pharmacy department at the VA Hospital in Albuquerque accompanies physicians on their rounds of patients everyday [sic]. This means, of course, that a pharmacist should or would have been with Dr. Wood and other treating physicians when Mr. Van Winkle was being seen in rounds in each day. The pharmacist therefore should have known that the drugs being given to Mr. Van Winkle did not properly "match up" with his condition and the pharmacist should have known the results of the culture, and therefore should have known that Mr. Van Winkle was receiving the wrong drugs for his condition.

December 2 Letter at 1. This individual's failure to spot the problem and warn the treating physicians, the Plaintiffs add, lengthened the time required for a proper diagnosis and thus allowed Van Winkle's condition to worsen. See December 2 Letter at 1.

The Plaintiffs followed up with a one-sentence letter on December 9, 2013 explaining that their "letter of December 2 should be regarded as and is intended as an amendment to the original April 2, 2013 letter." Letter from Doug Perrin to Bonita Ortiz, Office of Regional Counsel (dated December 9, 2013), filed October 17, 2014 (Doc. 52-5). The VA responded via facsimile the same day with a letter explaining: "There is no provision to amend a tort claim after this office has adjudicated the claim and issued a final decision." Letter from Benita Ortiz,

_____

[10]Because Van Winkle died on September 10, 2013, his daughter, Gallegos, submitted subsequent letters as the personal representative of his estate. See Amended Complaint ¶ 16, at 4.

Representational Paralegal, to Doug Perrin (dated December 9, 2013), filed October 17, 2014 (Doc. 52-6)("Second VA Letter").

The Plaintiffs submitted a letter requesting reconsideration of the VA's denial the next day.  See Letter from Doug Perrin to General Counsel, Department of Veterans Affairs (dated December 10, 2013), filed October 17, 2014 (Doc. 52-7)("Request for Reconsideration").  The request for reconsideration argued: (i) that the VA failed to provide documentation that Dr. Wood was not its employee and that, under Woodruff v. Covington, 389 F.3d 1117 (10th Cir. 2004), she might qualify as an employee under a functional test; and (ii) that the pharmacy employees failed to exercise ordinary care or meet their professional obligations in the performance of their duties.  Request for Reconsideration at 1.

The Plaintiffs submitted a final letter on April 23, 2014.  See Final Letter at 1.  This letter did not mention or incorporate by reference any of the Plaintiffs' earlier letters.  See Final Letter at 1-3.  It restated the same factual obligations, with one exception: it alleged that Dr. Christopher Quintana, who was "assisting Dr. Wood in the care and treatment of Mr. Van Winkle," received notice of a positive urine test result for Staphylococcus aureus but failed to convey it to Dr. Wood.  Final Letter at 1.

## PROCEDURAL BACKGROUND

On September 25, 2013, the Plaintiffs[11] filed their first Complaint in the First Judicial District Court of the County of Santa Fe, New Mexico.  See Complaint for Wrongful Death Damages Due to Medical Malpractice, filed November 4, 2013 (Doc. 10-1)("Original Complaint").  The Original Complaint names two defendants: Dr. Wood and Medical

---

[11]Plaintiff Gallegos, Van Winkle's daughter, brought suit both individually and as the personal representative for Van Winkle's estate.

Associates.  <u>See</u> Original Complaint ¶ 1, at 1.  It stated that "Dr. Maureen Wood was not an employee of the Department of Veterans Affairs, but was rather an employee of Medical Doctor Associates, LLC, and her acts and omissions are the acts and omissions of Medical Doctor Associates, LLC under the doctrine of *respondeat superior*."  Original Complaint ¶ 5, at 1.  The Plaintiffs allege that Dr. Wood's treatment amounts to medical malpractice, adding that her corporate employer is liable under respondeat superior and for failing to investigate her abilities, monitor her activities, and supervise her.  <u>See</u> Original Complaint ¶¶ 15-17, at 4-5.

Defendants Dr. Wood and Medical Associates filed a Notice of Removal on November 4, 2013, moving the case from New Mexico's First Judicial District to the United States District Court for the District of New Mexico.  <u>See</u> Defendants Maureen Wood, M.D. and Medical Doctor Associates, LLC's Notice of Removal, filed November 4, 2013 (Doc. 10)("Notice of Removal").  Their notice is based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a)(1)-(2) and 1441(a).  The notice states that removal was appropriate, because the "Plaintiffs are all residents of the State of New Mexico . . . .  Dr. Wood is a resident of the State of New Jersey and Medical Doctor Associates, LLC is a foreign limited liability company, and . . . the amount in controversy exceeds $75,000.00."  Notice of Removal ¶ 8, at 3.

The Plaintiffs filed their Amended Complaint on June 30, 2014.  It repeats the basic factual narrative set out above and condensed its arguments into three claims for relief:

Defendant Maureen Wood, M.D., failed to conduct herself as a reasonably qualified internal medicine physician would conduct herself in the same or similar circumstances in her treatment of Mr. Van Winkle and was therefore negligent. Without limitation, her negligence consists of failing to properly diagnose Mr. Van Winkle, failing to review the chart and recognize and properly treat the staph aureus infection and discharging Mr. Van Winkle prematurely, and without sufficient proper antibiotic coverage.

Defendant Medical Doctor Associates, LLC is liable for the negligence of its agent, Maureen Wood, M.D., as set forth above, and is independently and directly

liable for its failure to properly and adequately investigate Dr. Wood's credentials and abilities, monitor her activities and supervise her. This also constitutes a breach of Medical Doctor Associates, LLC's contract with the Veterans Administration, of which Plaintiff Joseph Oran Van Winkle is a third party beneficiary.

The United States is liable for the negligence of its agents as set forth in Paragraphs 8-10 above, for their failure to recognize the wrong medications being given and their failure to notify Dr. Wood of the positive culture and drugs to which the staph aureus was susceptible.

Amended Complaint ¶¶ 21-22, at 5.  Paragraphs 8-10 discuss "[a] pharmacist or representative of the pharmacy department employed by the United States VA Medical Center," and Dr. Quintana, whom they call "an agent or employee of the United States."  Amended Complaint ¶¶ 8-10, at 3.

## 1.   The Motion to Dismiss.

The United States moved to dismiss the Amended Complaint pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, on the grounds that the Court lacks subject-matter jurisdiction, because the Plaintiffs failed to exhaust their administrative remedies as 28 U.S.C. § 2675 requires.  See Motion at 1.  The FTCA, the United States contends, required the Plaintiffs to provide "(1) sufficient information for the agency to investigate the claims, and (2) a sum certain amount of damages sought."  Motion at 9 (citing Cizek v. United States, 953 F.2d 1232, 1233 (10th Cir. 1992)).  It alleges that the Plaintiffs failed to provide sufficient notice to the VA. See Motion at 1.

First, the United States argues, the April 2 Letter fails to provide sufficient notice of the Plaintiffs' subsequent claims against the unnamed pharmacist and Dr. Quintana.  See Motion at 10.  The April 2 Letter "complained only of the care provided by Dr. Wood," and makes "no mention of Dr. Quintana . . . and an unnamed pharmacist."  Motion at 10.  It explains that, "[i]n general, the scope of FTCA litigation cannot be expanded by adding claims not included in the administrative claim."  Motion at 9.  The United States then cites other cases in which a Notice

of Claim failed to provide sufficient notice of the complaint's claims.  See Motion at 10.  It concludes that it "could not have known Plaintiffs were alleging an unnamed pharmacist and Dr. Quintana . . . were responsible for failing to catch Dr. Wood's purported malpractice."  Motion at 11.

Second, the United States contends that the Plaintiffs' December 2 Letter neither amended the April 2 Letter nor served as a new claim.  It states that there is no provision allowing amendments after final agency action on a claim under the FTCA.  See Motion at 8 (citing 28 C.F.R. § 14.2(c)("A claim presented in compliance with paragraph (a) of this section may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a).")).  It refers to the April 23, 2014 Final Letter as the "Second Notice of Claim."  Motion at 11.  It thus attempts to separate all of the parties' correspondence into two formal Notices, drawing a gap between the Plaintiffs' allegedly ineffectual April 2 Letter and their April 23, 2014, Final Letter.

Third, the United States argues that the allegations against both Dr. Quintana and the unnamed pharmacist are premature.  See Motion at 5.  It explains that FTCA claimants must wait to file suit until (i) the agency finally denies the claim; or (ii) at least six months have passed after the claim was filed.  See Motion at 5.  It alleges that "both Plaintiffs' original Complaint and Amended Complaint" were filed less than six months after the Plaintiffs' April 23, 2014, Final Letter.  Motion at 11.  Because amendment cannot cure premature lawsuits, it says, the Court must dismiss the entire case.  See Motion at 11.

Fourth, the United States notes that Gallegos, who brought suit individually and as the personal representative for her deceased father's estate, filed her suit prematurely.  It alleges that she did not file any claims until the Plaintiffs' Final Letter.  See Motion at 12.  It notes that the

VA has not yet made a decision, and that six months have not yet passed.  See Motion at 12.  It concludes that she failed to provide sufficient notice to be a plaintiff in this suit.  See Motion at 12.

Dr. Wood and Medical Associates responded to the United States' Motion on October 31, 2014.  See Response of Defendants Maureen Wood, M.D., and Medical Doctor Associates, LLC, to Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 52] Filed by Defendant the United States of America, and Application for Relief Pursuant to Fed. R. Civ. P. 56(d), filed October 31, 2014 (Doc. 55)("Wood/Medical Associates Response").  They first concede that they would normally be "hard-pressed to demonstrate standing" to oppose the Motion.  Wood/Medical Associates Response at 2.  They argue, however, that the Motion was not "truly limited to seeking dismissal of the amended complaint," but instead contained "attempts to establish certain facts as true."  Wood/Medical Associates Response at 2.  The alleged dispute over material facts compelled them to "oppose the entry of what might well otherwise amount to partial summary judgment."  Wood/Medical Associates Response at 3.

Dr. Wood and Medical Associates argue that Dr. Wood may be a VA employee, noting that her employment status could justify a finding of subject-matter jurisdiction.  See Wood/Medical Associates Response at 4.  The Wood/Medical Associates Response invites the Court to apply a functional test based on United States v. Orleans, 425 U.S. 807 (1976)(Burger, J.), and Woodruff v. Covington, 389 F.3d 117 (10th Cir. 2004)(Ebel, J.).  See Wood/Medical Associates Response at 4.  Such a test would consider factors including:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Wood/Medical Associates Response at 6 (quoting Woodruff v. Covington, 389 F.3d at 1117). The Wood/Medical Associates Response then seeks discovery into whether "the United States controls only the end result, or may also control the manner of reaching the result," including the VA's treatment protocols, personnel policies, and other information.   It adds one final observation:

> One has to wonder just how the Office of the Regional Counsel of the Veterans Administration could have thoroughly reviewed Plaintiff's original Notice of Tort Claim  . . .  without taking note of the role in such failures that might be attributable to the medical center's laboratory, to Dr. Quintana, or to other physicians/personnel.

Wood/Medical Associates Response at 7.

The Plaintiffs responded on November 7, 2014.  See Plaintiffs' Response to Defendant United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed November 7, 2014 (Doc. 57)("Plaintiffs' Response").  The Plaintiffs first defend the sufficiency of their notice of their allegations against the unnamed pharmacist.  See Plaintiffs' Response at 2. They allege that their December 2 Letter was a new claim, rather than an amendment or supplement to the April 2 letter.  Although they admit that they "called [the letter] the wrong thing (an amendment) that should not change the substance."  Plaintiffs' Response at 3.  They cite a series of cases emphasizing the underlying purpose of the FTCA's notice requirement -- allowing the agency to begin its own investigation.  See Plaintiffs' Response at 3.  They then note that the agency denied the claim on December 9, 2013, and that they requested reconsideration the next day.  See Plaintiffs' Response at 2-3.  This timeframe would mean that they filed suit within the established deadlines.

The Plaintiffs do not make a similar argument for the allegations against Dr. Quintana. They allow that they provided notice of the claims against him on April 23, 2014.  See Plaintiffs'

Response at 2.  They state that they filed suit on June 30, 2014, which was before the FTCA's six-month waiting period had elapsed.  See Plaintiffs' Response at 4, 5.  The Plaintiffs instead contend that, because the six-month time period has now expired, the Court should allow them to amend their Amended Complaint and that any dismissal should be without prejudice to refiling.  See Plaintiffs' Response at 2.  They add that the Court should not require them to serve the United States again.  See Plaintiffs' Response at 2.

      **2.**     **The Motion for Extension.**

The United States had until November 17, 2014 to file a Reply to the Wood/Medical Associates Response.  See Motion for Extension at 2.  At 8:37 A.M. that day, the United States' counsel sent an electronic message to Dr. Wood and Medical Associates' counsel requesting his assent to an extension of time until November 24, 2014, the day the United States was required to file a Reply to the Plaintiffs' Response.  See Electronic Mail from Ruth Fuess Keegan to Remo E. Gay (dated November 17, 2014), filed November 18, 2014 (Doc. 59-1)("Extension Email").  Dr. Wood and Medical Associates' counsel did not respond immediately, and the United States' counsel proceeded to file the Motion for Extension on November 18, 2014.  See Motion for Extension at 1.

Dr. Wood and Medical Associates responded on December 2, 2014.  See Response of Defendants Maureen Wood, M.D. and Medical Doctor Associates, LLC, to Motion for Extension of Time to File Reply, filed December 2, 2014 (Doc. 62)("Response to Motion for Extension").  Dr. Wood and Medical Associates state that they "would ordinarily not oppose a reasonable extension of time," but "feel obligated, however, to object to the USA's tardiness and to point out that even the USA's Motion for Extension [Doc. 59] was not timely filed."  Response to Motion for Extension at 2.  They further object to the United States' decision to file its Reply

without waiting for the Court to grant its Motion for Extension.  See Response to Motion for Extension at 2.  They urge the Court to deny the Motion for Extension and, pursuant to D.N.M.LR-CIV. 7.1(b), deem the briefing on the underlying Motion complete as of November 17, 2014.  Response to Motion for Extension at 2-3.

The United States filed a reply ten days later.  See Reply in Support of Motion for Extension of Time to File Reply, filed December 12, 2014 (Doc. 64)("Reply in Support of Extension").  The United States' counsel admits "that she should have reviewed Defendant Wood's response to the United States' Motion to Dismiss earlier."  Reply in Support of Extension at 2.  She then, however, blames her failure on (i) Dr. Wood's earlier indication that she would not oppose the motion; and (ii) her "assumption that Defendant Wood would not object to a request for an extension of time . . . ."  Reply in Support of Extension at 2-3.  She argues that the parties have not suffered any prejudice and that Dr. Wood "does not claim that her interests will be adversely affected by the extension of time."  Reply in Support of Extension at 3.

   **3.      The United States' Reply.**

The United States replied to the Plaintiffs and the other Defendants on November 20, 2014.  See Reply to Response of Defendants Maureen Wood, M.D. and Medical Doctor Associates, LLC and to Plaintiffs' Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed November 20, 2014 (Doc. 60)("United States Reply").

The United States first questions Dr. Wood and Medical Associates' standing to oppose its Motion.  See United States Reply at 1.  It notes that they have not asserted any cross-claims against it, that they have no legal interest which a decision would affect, and that even they concede they lack standing.  See United States Reply at 1-2.

The United States then attacks Dr. Wood and Medical Associates' argument that Dr. Wood's employment status is relevant to its Motion.  United States Reply at 3.  The United States contends that Plaintiffs "do not assert claims against the United States based on the actions of Dr. Wood," as their Amended Complaint focuses on Dr. Quintana and the unnamed pharmacist.  United States Reply at 3.  It reiterates that disputes over liability are irrelevant to its Motion to Dismiss and that "[t]he single issue before the Court is whether Plaintiffs exhausted their administrative remedies."  United States Reply at 3.  As a backstop, the United States maintains that Dr. Wood is not an employee, citing the Plaintiffs' Amended Complaint, Dr. Wood's deposition testimony, and an agreement between Dr. Wood and Medical Associates. See United States Reply at 2.

The United States addresses all possible notices of claims against it.  It first concentrates on the April 2 Letter, arguing that "[n]either Plaintiffs, nor Contractor Defendants, dispute that Plaintiffs' First Notice of Claim did not provide the Agency with notice of the claims raised in the Amended Complaint."  United States Reply at 4.  It says it had no "fair opportunity to investigate and possibly settle the claim" before the start of litigation.  United States Reply at 4.

Second, the United States contends that the Plaintiffs' December 2 Letter was not a new or independent notice of claim.  See United States Reply at 4.  It points out that the "Plaintiffs labeled their December 2, 2013 letter, as a 'supplement' to the notice of claim dated April 2, 2013, and later referenced it as an 'amendment.'"  United States Reply at 4.  It argues that 28 U.S.C. § 2401(b), which requires that plaintiffs bring tort claims against the United States within two years of accrual unless they are presented in writing to a federal agency, bars the Plaintiffs' suit. See United States Reply at 5.

Third, the United States argues that, even if the December 2 Letter is a new claim (i) the VA has not issued a denial; and (ii) even if the VA has issued a denial, the Plaintiffs sought reconsideration of the wrong claim.  See United States Reply at 5.  On its account, the VA "alerted Plaintiffs that the supplement or amendment to the December 2, 2013 notice of claim had no effect and took no further action."  See United States Reply at 5.  The United States contends that, "[t]o the extent that" the Plaintiffs interpreted the message as a denial, however, they failed to seek reconsideration within six months under 28 U.S.C. § 2401(b).  United States Reply at 5.  The Plaintiffs sent a letter on December 10, 2013, requesting reconsideration, it admits, but the letter "specifically stated that it was requesting reconsideration of the claim the VA had denied on June 19, 2013."  United States Reply at 5-6.

Finally, the United States argues that amendments cannot cure the Plaintiffs' failure to exhaust their administrative remedies for their allegations against Dr. Quintana.  See United States Reply at 6-7.  It cites cases holding that to do otherwise in this context "would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system."  United States Reply at 7 (citing Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999)(Magill, J.)).

**4.      The Hearing.**

The Court held a hearing on the Motion and the Motion for Extension on December 18, 2014.  See Transcript of Hearing at 1:1 (taken December 18, 2014)("Tr.").[12]  The Court began the hearing with the Motion for Extension, stating that it was "inclined to allow it."  Tr. at 2:12-

---

[12]The Court's citations to the transcript for this hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

- 18 -

15.  It granted the Motion for Extension after the parties failed to voice any significant comments or arguments.  See Tr. at 2:23-3:13.

The Court then asked the United States whether the parties were "just quibbling over the heading" on the Plaintiffs' December 2 Letter.  Tr. at 6:11-12 (Court).  The United States replied that, "frankly, I think it's a good point," but again argued that the Plaintiffs nonetheless failed to request reconsideration for the December 2 Letter.  Tr. at 6:13-15 (Keegan).  It could not cite any cases on point.  See Tr. at 6:23-25 (Keegan).  It could, however, assure the Court that there would not be statute of limitations issues for the allegations against Dr. Quintana.  See Tr. at 7:8-8:4 (Keegan).  It pointed the Court to Glade ex rel. Lundskow v. United States, 692 F.3d 718 (7th Cir. 2012)(Posner, J.).  See Tr. at 9:13-19 (Keegan).

The Plaintiffs' counsel conceded that he might have "mess[ed] up a two-car parade," but continued to argue that the errors were not fatal to the suit.  Tr. at 11:1-6 (Perrin).  The Plaintiffs maintained that the United States had sufficient information about the allegations against the unnamed pharmacist to investigate the underlying facts by December 2, 2013.  See Tr. at 11:6-13 (Perrin).  They argued that, even  if they failed to give proper notice as to their allegations against Dr. Quintana,[13] but contended that this reality should not result in dismissal because: (i) the Court has diversity jurisdiction over Dr. Wood; and (ii) as a practical matter, any separate lawsuit would only be re-consolidated into the present case.  See Tr. at 12:17-13:17 (Perrin).

---

[13]The Court recognizes that Plaintiffs appeared to concede the Court's lack of jurisdiction with respect to the allegations against Mr. Quintana.  See Tr. at 12:17-20 (Court, Perrin).  Dr. Wood and Medical Associates' counsel, however, subsequently stated that, "Clearly, the VA looked at the entire case and determined that no VA employee had been negligent.  This is a denial of the claim as to all VA employees, unless I just don't understand the language."  Tr. at 16:10-14.  He later added that he believed "that the notice of tort claim is more than adequate" as to all of Plaintiff's allegations.  Tr. at 22:18-23.  Plaintiffs' counsel later stated that "I think I like [Dr. Wood and Medical Associates' counsel]'s argument better than mine."  Tr. at 31:25-32:2.  The Court concludes that these statements preserved the argument that the April 2 Letter provided sufficient notice of the Plaintiffs' allegations against Dr. Quintana.

Dr. Wood and Medical Associates stated that they were unsure whether they had standing to discuss jurisdiction.  See Tr. at 14:2-6 (Gay).  They justified their involvement in the case by arguing that the Motion was actually a motion for summary judgment.  See Tr. at 20:24-21:3 (Gay).  They also did their best to reinforce the Plaintiffs' arguments.  They noted that the Plaintiffs had included both Dr. Quintana and a possible responsible pharmacist in the lengthy list attached to their initial April 2 Letter.  See Tr. at 14:6-15:9 (Gay).  They added that the United States' First VA Letter stated that the VA "wanted to be sure that Mr. Van Winkle received good care from his other VA providers."  Tr. at 15:13-16:9 (Gay).  They concluded that "[c]learly, the VA looked at the entire case . . . .  This is a denial of the claim as to all VA employees." Tr. at 16:10-14 (Gay).

The United States responded to these arguments, explaining that the VA had the medical records reviewed, but did not discuss them with Dr. Quintana or "the pharmacist," because "they were not the doctors or responsible medical providers of Mr. Van Winkle."  Tr. at 25:9-18 (Keegan).  It cited an unpublished opinion from the Western District of Pennsylvania to overcome the fact that the Plaintiffs' original list of medical providers included Dr. Quintana. See Tr. at 25:21-27:5 (Keegan)(citing Ham v. United States, No. CIV.A. 07-29E, 2008 WL 818197, at *4 (W.D. Pa. March 26, 2008)(McVerry, J.)(unpublished)).   The United States reiterated that Dr. Wood's affirmative defenses were "not a claim against the United States," making her employment status irrelevant.  Tr. at 32:10-16.

## LAW REGARDING EXTENSIONS OF TIME

Rule 6(b) of the Federal Rules of Civil Procedure governs the circumstances under which a court can grant a party an extension of time to perform a specific act.  The rule states:

      **(b)**     **Extending Time.**

          **(1)**    *In General*.  When an act may or must be done within a specified time, the court may, for good cause, extend the time:

                **(A)**   with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

                **(B)**   on motion made after the time has expired if the party failed to act because of excusable neglect.

          **(2)**    **Exceptions.**  A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b) (bold in original).  "Good cause," necessary for an extension of time under rule 6(b)(1)(A),  "generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law."  Black's Law Dictionary 692 (6th ed. 1990).  See Black's Law Dictionary 251 (9th ed. 2009)("good cause. . . .  A legally sufficient reason.").  Showing good cause for an extension of time is not a particularly demanding requirement.  See United States v. Bd. of Cnty. Comm'rs, No. CIV. 08-0501 JB/WPL, 2010 WL 965607, at *4 (D.N.M. February 18, 2010)(Browning, J.)(granting an extension of time for good cause when "many of the impediments to timely filing a response . . . were the result of poor decision-making on the part of Ramirez' counsel," while "others were seasonal circumstances that a party filing a dispositive motion on Christmas Eve might foresee the opposing party raising"); United States v. Portillo-Quezada, Nos. 03-20051, 08-2295, 2010 WL 396309, at *1 (D. Kan. Jan. 27, 2010)(Lungstrum, J.)(finding good cause where attorney argued only that he "needs additional time to contact a witness for the Government at the trial of this case who may recant or change her testimony in material respects.  Completion of research and drafting of the memorandum in support is also needed"); Weingarten v. Optima Commc'n Sys., Inc., 544 F. Supp. 2d 193, 196 n.1 (S.D.N.Y. 2008)(Scheindlin, J.)("Under Rule 6(b)(1)(A) . . . the court

- 21 -

may, for good cause, extend the time to move if a request is made before the original time period expires.").

On the other hand, "a finding of excusable neglect under Rule 6(b)[(1)(B)] requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period." In re Four Seasons Sec. Law Litig., 493 F.2d 1288, 1290 (10th Cir. 1974)(Doyle, J.).  See Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)(Baldock, J.)("[S]ome showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required."  (internal quotation marks and emphasis omitted)).  "[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)." Quigley v. Rosenthal, 427 F.3d 1232, 1238 (10th Cir. 2005)(Briscoe, J.).  Excusable neglect, therefore, is a higher burden than good cause.

## LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(Barrett, J.)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)(Scalia, J.)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter

jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."   Ruiz v. McDonnell, 299 F .3d 1173, 1180 (10th Cir. 2002)(VanBebber, J.).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Alto Eldorado Partners v. City of Santa Fe, 2009 WL 1312856, at *8-9 (D.N.M. Mar. 11, 2009)(Browning, J.)(citations omitted)).  The United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(Randall, J.)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995)(Brorby, J.); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)(Baldock, J.).  In those instances, a court's reference to evidence outside

the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.

See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5

(10th Cir. 1987)(Anderson, J.)).  Where, however, the court determines that jurisdictional issues

raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve

the motion either under rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180

F.3d 1124, 1129 (10th Cir. 1999)(Murphy, J.); Tippett v. United States, 108 F.3d 1194, 1196

(10th Cir. 1997)(Briscoe, J.).  "When deciding whether jurisdiction is intertwined with the merits

of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question

requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States,

343 F.3d 1282, 1296 (10th Cir. 2003)(Hartz, J.)(quoting Sizova v. Nat'l Inst. of Standards &

Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)(Seymour, J.)).

## LAW REGARDING THE FTCA

As with any jurisdictional issue, the party bringing the suit against the United States bears

the burden of proving that Congress has waived sovereign immunity.  See James v. United

States, 970 F.2d 750, 753 (10th Cir. 1992).  It is "axiomatic that the United States may not be

sued without its consent and that the existence of consent is a prerequisite for jurisdiction."

United States v. Mitchell, 463 U.S. 206, 212 (1983).  "Challenges to jurisdiction can . . . be

raised at any time prior to final judgment."  Grupo Dataflux v. Atlas Global Group, L.P., 541

U.S. 567, 571 (2004)(citing Capron v. Van Noorden, 6 U.S. (2 Cranch) 126 (1804)).

The terms of the United States' consent define the parameters of federal-court jurisdiction

to entertain suits brought against it.  See United States v. Orleans, 425 U.S. 807, 814 (1976);

Ewell v. United States, 776 F.2d 246, 248 (10th Cir. 1985).  When the United States waives its

immunity from suit, a court should neither narrow the waiver nor "take it upon [itself] to extend

the waiver beyond that which Congress intended." Smith v. United States, 507 U.S. at 203 (quoting United States v. Kubrick, 444 U.S. 111, 117-18 (1979)).

In 1948, Congress enacted the FTCA, which waived the sovereign immunity of the United States for certain torts that federal employees commit. See F.D.I.C. v. Meyer, 510 U.S. at 475. Sovereign immunity is waived only for certain torts that United States employees cause while acting within the scope of their office or employment. See 28 U.S.C. § 1346(b).

### 1.   **Exhaustion Requirements.**

There are certain procedural requirements in suing the United States under the FTCA to which a plaintiff must strictly adhere, before a district court can exercise jurisdiction. The FTCA's jurisdictional statute provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a)(emphasis added). This statute "requires that claims for damages against the government be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005)(Tymkovich, J.)(quoting Bradley v. United States ex. rel. Veterans Admin., 951 F.2d 268, 270 (10th Cir. 1991)(Anderson, J.)).

"[A] claim should give notice of the underlying facts and circumstances 'rather than the exact grounds upon which plaintiff seeks to hold the government liable.'" Staggs v. United States ex rel. Dep't of Health and Human Servs., 425 F.3d 881, 884 (10th Cir. 2005)(McConnell,

J.)(quoting Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853).  The Tenth

Circuit has added that "the FTCA's notice requirements should not be interpreted inflexibly."

Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853.  Whether a plaintiff's

administrative claim is sufficient to meet 28 U.S.C. § 2675(a)'s notice requirement is a question

of law.  See Staggs v. United States ex rel. Dep't of Health and Human Servs., 425 F.3d at 884.

### 2. **Filing Deadlines.**

The Tenth Circuit recently observed:

> [T]he FTCA has both an administrative-exhaustion requirement, set forth in 28
> U.S.C. § 2675(a), and a statute of limitations, set forth in 28 U.S.C. § 2401(b).
> Combined, these provisions act as chronological bookends to an FTCA claim,
> marking both a date before which a claim may not be filed and a date after which
> any filing is untimely.

Barnes v. United States, 776 F.3d 1134, 1139 (10th Cir. 2015)(Holmes, J.).  Once a tort claim

accrues against the government, 28 U.S.C. § 2401 gives a claimant two years to present that

claim in writing to the appropriate federal agency.  See 28 U.S.C. § 2401(b)(explaining that

claim is "forever barred" unless presented within two years).  After submission of a written

claim, the agency usually has six months to reach a final disposition on the claim.  If the agency

denies the claim, the claimant has six months to file suit in federal court.  See 28 U.S.C. §

2401(b).

If the agency fails to make a final disposition of the claim within six months, the claimant

may "deem[]" that failure a "final denial of the claim" and proceed with his or her suit under the

FTCA.  28 U.S.C. § 2675(a).  In the Tenth Circuit, "(at least until there has been a final denial by

the relevant agency) there is no limit on when a plaintiff may file a lawsuit predicated on a

deemed denial."  Barnes v. United States, 776 F.3d at 1140-41.  An agency may "trigger[] §

2401(b)'s six-month limitations period through final denial of administrative FTCA claims after a 'deemed denial.'"  Barnes v. United States, 776 F.3d at 1141.

### 3. Effect of Failure to Exhaust.

"[A]s a general rule, a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit."  Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999)(Magill, J.)(internal quotations omitted).  This rule exists because "[a]llowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system."  Duplan v. Harper, 188 F.3d at 1199.  Courts must dismiss these claims "without regard to concern for judicial efficiency."  Ruppert v. Aragon, 448 F. App'x 862, 863 (10th Cir. 2012)(O'Brien, J.)(unpublished).[14]  Even the filing of an amended complaint may not serve to cure a prematurely filed original complaint.  See Stevens v. United States, 61 F. App'x 625, 627 (10th Cir. 2003)(Baldock, J.)(unpublished).

---

[14]Rupert v. Aragon is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has explained:

> In this circuit, unpublished orders are not binding precedent . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Ruppert v. Aragon and Stevens v. United States, 61 F. App'x 625 (10th Cir. 2003), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

There is at least one limited exception to the general rule.  Duplan v. Harper recognizes an exception where the government "expressly agreed" to the district court's decision to treat the amended complaint as a new action.  188 F.3d at 1199.  See Mires v. United States, 466 F.3d 1208, 1211 (10th Cir. 2006)(McConnell, J.)(finding new action where plaintiff "sought permission to file -- and, with the government's consent and district court's permission, did file -- an amended complaint").

### 4.     Definition of "Sufficient Notice".

Courts define "sufficient notice" based on the facts of each case before them.  In Estate of Trentadue ex rel. Aguilar v. United States, the United States contended that the plaintiffs' administrative claim was insufficient for notice of intentional infliction of emotional distress, because it was based on a theory that prison officials had murdered Trentadue, the inmate, and the allegations did not discuss the specific grounds on which the district court relied in awarding damages, "namely the government's treatment of the Trentadue family in the aftermath of his death and its actions in conducting an autopsy after claiming that no autopsy would be performed without prior approval."  397 F.3d at 852.  The Tenth Circuit disagreed, holding that the "plaintiffs' administrative claim provided notice that [the Department of Justice] should investigate the prison officials' conduct." 397 F.3d at 853.  The Tenth Circuit reasoned that language within the administrative claim "gave DOJ notice of the facts and circumstances surrounding plaintiffs' emotional distress claim and, moreover, is consistent with the plaintiffs' subsequent allegations in their amended complaints."  397 F.3d at 853.

The Tenth Circuit contrasted Estate of Trentadue ex rel. Aguilar v. United States with Dynamic Image Techs., Inc. v. United States, 221 F.3d 34 (1st Cir. 2000)(Selya, J.), where the United States Court of Appeals for the First Circuit held that the plaintiff's administrative claim

did not put the agency on notice that it should have investigated the potentially tortious conduct, because the plaintiff's administrative claims were for "misrepresentation, libel, slander, contractual interference, and discrimination," and the amended claims for false arrest arose out of two separate incidences. 221 F.3d at 40. The First Circuit stated: "Though prolix, that claim did not contain so much as a hint about the alleged false arrest or the incident that spawned it." 221 F.3d at 40. The First Circuit thus concluded that, "regardless of the labels employed in the amended complaint, that complaint, in substance, seeks recovery based solely on an incident that was not mentioned in the plaintiffs' administrative claim." 221 F.3d at 40 (emphasis omitted).

In Glade ex rel. Lundskow v. United States, a man receiving mental health treatment at a VA facility alleged that his therapist worsened his condition by initiating a sexual relationship with him. See 692 F.3d at 720. He filed a notice of claim with the VA that "d[id] not mention a failure of anyone to use due care besides the therapist." 692 F.3d at 722. The Seventh Circuit, reviewing the notice, commented that "Reading the administrative claim you would think the plaintiff was just seeking damages under a theory of respondeat superior against an employer for an employee's battery, and we know that such a theory won't fly under the Tort Claims Act." 692 F.3d at 722. The plaintiff recognized this problem before filing his complaint, and thus asserted a "special relationship" theory of liability instead. 692 F.3d at 723. The Seventh Circuit affirmed the district court's decision to dismiss the suit, explaining:

> The administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability. *Palay v. United States,* 349 F.3d 418, 425–26 (7th Cir.2003); *Murrey v. United States,* 73 F.3d 1448, 1452–53 (7th Cir.1996). The plaintiff's claim didn't do that. The legally trained reader would assume that the plaintiff simply was unaware that the mere fact of a battery by a VA employee would not impose liability on the employer. We're about to see that the "special relationship" tort theory advanced in the plaintiff's complaint (as distinct from the administrative claim) is outside the bounds of plausibility—hardly the sort of theory that the VA's legal department should have guessed would be the ground of a lawsuit.

692 F.3d at 722-23.

     **5.**    **Medical Cases.**

Some courts have required the claimant to provide extensive information about the injuries alleged in the complaint. In Staggs v. United States ex rel. Dep't of Health and Human Servs., the Tenth Circuit held that the plaintiff's administrative claim, accusing the hospital of "a substantial departure from the standard of care and . . . negligent management of her pregnancy and labor," was not sufficient to put the agency on notice that it should have investigated a claim based on lack of informed consent. 425 F.3d at 884. The Tenth Circuit stated that "[n]othing in Staggs' administrative claims suggests that Staggs consented to a course of treatment or remained on such a course without being informed of her options and risks." 425 F.3d at 884. The Tenth Circuit reasoned that, "given the length and factual specificity of Staggs' description of [the administrative] claim" and the claim's failure to "mention [] consent or a suitable synonym, [the government agency] could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary." 425 F.3d at 885.

Ham v. United States, a similarly restrictive case, involved a prisoner's claims against three dentists who attempted to fix a damaged tooth. See 2008 WL 818197, at *4. The plaintiff's administrative claim focused on the first two dentists' alleged errors, mentioning the third dentist only in passing. The complaint, however, focused on the third dentist's refusal to repair, rather than extract, the tooth. See 2008 WL 818197, at *4. Although the court said that the claim "encompasses any cause of action fairly implicit in the facts," it dismissed the complaint, because it "offers the first notice that [the third dentist's] actions were legally objectionable." 2008 WL 818197, at *4.

In Palay v. United States, 349 F.3d 418 (7th Cir. 2003)(Rovner, J.), a prisoner sent a notice of a claim charging the Bureau of Prisons with failing to protect him from violence at the hands of fellow inmates and describing his injuries, but omitting "facts suggesting that the prison medical staff had treated him inappropriately."  349 F.3d at 426.  The prisoner later brought suit on a medical malpractice theory.  The Seventh Circuit held that, although it was a "close[] question," the prisoner failed to provide sufficient notice, because he "did not include facts in his [notice] from which a legally sophisticated reader might have discerned that he had received inadequate medical treatment."  349 F.3d at 427 (distinguishing this standard from the Fifth Circuit's more liberal standard).  See Bethel v. United States, ex rel. Veterans Admin. Med. Ctr. of Denver, Colorado, 495 F. Supp. 2d 1121, 1124 (D. Colo. 2007)(Figa, J.)(holding that plaintiff's treatment-based claim, which focused on medical malpractice, was insufficient notice of subsequent negligent supervision argument).

Other courts have been more generous.  In Coffey v. United States, 906 F. Supp. 2d 1114 (D.N.M. 2012)(Browning, J.), the Court determined that a ninety-word claim that alleged that a prisoner's "medical condition was ignored, that he was denied medication, and that he was transferred by the [Bureau of Indian Affairs]" provided sufficient notice of his mother's negligent screening and transfer theories.  906 F. Supp. 2d at 1153-54.  The Court found that the claim, despite its brevity, "gave the BIA notice of the facts and circumstances surrounding Crutcher's medical needs and subsequent death [sufficient] to provide the BIA notice that it should have investigated the underlying conduct." 906 F. Supp. 2d at 1154.

## ANALYSIS

The Court will grant the United States' Motion for Extension.  The United States acted in good faith, and Dr. Wood and Medical Associates' counsel's irresolution on whether to take a

position provides a reasonable basis for the failure to comply.  Moreover, the delayed filing did not prejudice any party.

The Court will deny the United States' Motion.  It first concludes that Dr. Wood's employment status is irrelevant to the United States' Motion, because the Plaintiffs make no claims against the United States based on her conduct.  It thus declines to address the issue here on a less than robust record.  It then determines that the Plaintiffs' April 2 Letter provided sufficient notice of their allegations against both Dr. Quintana and the unnamed pharmacist.  It concludes that the Plaintiffs' December 2 Letter to the VA was a separate notice of claim despite its label.  Finally, it notes that the Plaintiffs' recent Final Letter failed to provide the VA with sufficient notice of the allegations against Dr. Quintana.

## I.   THE UNITED STATES' FAILURE TO FILE A TIMELY REPLY WAS EXCUSABLE NEGLECT UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.

The United States' failure to file a timely Reply to the Wood/Medical Associates Response by November 17, 2014, constitutes excusable neglect under rule 6(b).[15]   Rule 6(b)(1)(B) applies when a motion is made after the time has expired.  See Fed. R. Civ. P. 6(b)(1)(B) (covering "motion[s] made after the time has expired").  None of the complete bars to extension apply here.  See Fed. R. Civ. Proc. 6(b)(2) (applying bar to "Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)").

The United States' delay qualifies as "excusable neglect" because it can show both "good faith" and "a reasonable basis for not complying within the specified period."  In re Four Seasons Sec. Law Litig., 493 F.2d at 1290.  The United States can show good faith here, given its attempt to contact opposing counsel via electronic mail.  See Extension Email at 1.  The United States'

---

[15]The same analysis applies to the United States' choice to file its Reply before the Court granted its Motion for Extension.

delay risked sacrificing important briefing on a dispositive motion for no tactical advantages, so it seems unlikely that it had any ulterior motives.  The initial statement of Dr. Wood and Medical Associates' counsel that they would take no position on the motion and their failure to promptly reply to the Extension Email both provide a reasonable basis for the United States' failure to comply with the timing requirements.  See Reply in Support of Extension at 2-3.  The case did not exclusively involve "inadvertence, ignorance of the rules, and mistakes construing the rules." Quigley v. Rosenthal, 427 F.3d at 1238.  Dr. Wood and Medical Associates have failed to connect the delay to any prejudice, and the Court does not see how allowing the United States to submit both of its Replies by November 24, 2014, could harm any of the parties' positions.  See Reply in Support of Extension at 3.  The Court gave all parties a full, robust hearing without time limits, so the parties have had ample opportunities to make all of their arguments.  The Court will thus grant the Motion for Extension.

## II.    DR. WOOD'S EMPLOYMENT STATUS IS IRRELEVANT TO THE UNITED STATES' MOTION TO DISMISS.

If the jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion either under rule 12(b)(6) or rule 56.  Courts determining whether jurisdiction is intertwined with the merits must consider "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(Hartz, J.)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)(Seymour, J.)). To determine whether a plaintiff has exhausted his or her administrative remedies, courts compare the complaint and the plaintiff's subsequent legal arguments to the notices sent to the target agency.  See Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853.

The United States argues that Dr. Wood's employment status is not relevant, citing the Amended Complaint's absence of allegations against it based on her actions.  See United States Reply at 3.  Dr. Wood and Medical Associates disagree, arguing: (i) that the United States' briefing, which assumes that Dr. Wood was an independent contractor, converted its Motion into a motion for summary judgment, see Tr. at 20:24-21:3 (Gay); and (ii) that if the Court found that there is no other basis for jurisdiction, she would be the necessary anchor.  See Tr. at 21:15-22.

The United States has the stronger argument.  The Amended Complaint alleges that the United States was "liable for the negligence of its agents as set forth in Paragraphs 8-10 above, for their failure to recognize the wrong medications being given and their failure to notify Dr. Wood of the positive culture and drugs to which the staph aureus was susceptible."  Amended Complaint ¶¶ 21-22, at 5.  Paragraphs 8-10 do not discuss Dr. Wood in detail.  The Plaintiffs' Response confirms that they sued the United States for:

> negligence of its employees in two respects: (a) for the negligence of Dr. Christopher Quintana in failing to notify Defendant Maureen Wood of Joseph Oran Van Winkle's positive test for staph aureus, and (b) for the negligence of the employees of the pharmacy in making rounds with Defendant Wood without recognizing or advising Dr. Wood that incorrect medications were being administered for staph aureus and not pointing this out to Defendant Wood.

Plaintiffs' Response at 1.  The Plaintiffs do not assert a respondeat superior theory against the VA based on Dr. Wood's care; their only claims against the United States are not based on Dr. Wood's conduct.  Dr. Wood and Medical Associates do not make any cross-claims against the United States.  See United States Reply at 1-2.  The Court thus has no need to resolve Dr. Wood's employment status to determine whether it has subject-matter jurisdiction over the Plaintiffs' allegations against the United States.  There is no need for the Court to convert the United States' motion into a motion for summary judgment.  As the United States notes, the

"single issue before the Court is whether Plaintiffs exhausted their administrative remedies."

United States Reply at 3.[16]

## III.   THE PLAINTIFFS' APRIL 2 LETTER PROVIDES SUFFICIENT NOTICE OF THEIR ALLEGATIONS AGAINST DR. QUINTANA AND THE UNNAMED PHARMACIST.

The Plaintiffs' April 2 Letter provides sufficient notice of their allegations against Dr. Quintana and the unnamed pharmacist.[17]   In the Tenth Circuit, the Plaintiffs are required to file "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."   Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 852.   The requirement is "pragmatic" and "should not be interpreted inflexibly."   Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853.

The Plaintiffs satisfy the notice requirement here for three primary reasons.   First, they name a sum certain -- $600,000.00.   See April 2 Letter at 1-3.   See 28 C.F.R. § 14.2 (requiring that notification must be "accompanied by a claim for money damages in a sum certain"); Cizek v. United States, 953 F.2d at 1233 (restating requirement for a "sum certain" amount of recovery sought).

---

[16]Given the Court's other conclusions, even Dr. Wood and Medical Associates may agree with this result.   At the hearing, the Court asked why it had to determine Dr. Wood's employment status to decide the Motion.   See Tr. at 21:10-11 (Court).   Dr. Wood and Medical Associates' counsel replied that, at least on his clients' theory of the case, "I don't think you do." Tr. at 21:15-18 (Gay).

[17]The Court concludes that the Plaintiffs have exhausted their administrative remedies in compliance with the FTCA.   If it did not so conclude, however, it would not permit the Plaintiffs to modify their Amended Complaint.   First, the "general rule" that plaintiffs cannot cure a premature complaint through amendment applies here.   Duplan v. Harper, 188 F.3d at 1199. Second, the Court is not permitted to consider efficiency concerns.   See Ruppert v. Aragon, 448 F. App'x at 863.   Because the United States has actively sought dismissal of the Amended Complaint, the exception detailed in Mires v. United States is inapplicable here.   466 F.3d at 1211.

Second, the United States' cited cases are distinguishable because they fall into two broad categories which are irrelevant here.   Many of the cases involve a plaintiff's attempt to piggyback a lawsuit against an employer, often for negligent supervision, onto a straightforward notice of claim alleging negligence by individual employees.   In Kikumura v. Osagie, 461 F.3d 1269 (10th Cir. 2006)(McConnell, J.), the plaintiff's tort claims focused on individual correctional officers.   See 461 F.3d at 1285, overruled on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)(Souter, J.), as explained in Robbins v. Oklahoma, 519 F.3d 1242, 1246–47 (10th Cir. 2008)(McConnell, J.).   Because he "fail[ed] to mention the possibility that his injuries were caused by the inadequate training and supervision of ADX staff," the Tenth Circuit dismissed his claims against the prison warden and other officers.   461 F.3d at 1306.

 Palay v. United States involves a prisoner's notice of claim that the Bureau of Prisons' "failure to protect [him] from the violence of fighting gang members" caused him pain, suffering, and emotional anguish. 349 F.3d at 422.   Unlike the Plaintiffs here, the prisoner failed to include any facts suggesting medical malpractice in his notice of claim.   See April 2 Letter at 3 ("What should have been treated simply and effectively turned into a very complex, dangerous situation.").   The plaintiff in Glade ex rel. Lundskow v. United States filed a notice of claim accusing a VA therapist of battery.   See 692 F.3d at 722.   The Seventh Circuit dismissed the claim, because the plaintiff's lawsuit alleged a completely different "special relationship" theory against the employer.   692 F.3d at 722.   The Plaintiffs, on the other hand, advance very similar negligence theories against two new individuals.   They do not argue that the VA negligently hired Dr. Quintana and the unnamed pharmacist, but rather that the two were personally negligent "for their failure to recognize the wrong medications being given and their failure to

notify Dr. Wood of the positive culture and drugs to which the staph aureus was susceptible." Amended Complaint ¶¶ 21-22, at 5.

A second category of the United States' cited cases involves attempts to unify a series of separate incidents. In <u>Salas v. United States</u>, 527 F. App'x 813 (10th Cir. 2013), the plaintiff filed a claim alleging that the Department of Homeland Security negligently deported her son on two occasions in 2001 and 2007. <u>See</u> 527 F. App'x at 816. The Tenth Circuit rejected the plaintiff's attempt to add another incident in 2008 to her suit, reasoning that she "did not present that basis of her claim to the DHS." 527 F. App'x at 816-17. Similarly, in <u>Deloria v. Veterans Admin.</u>, 927 F.2d 1009 (7th Cir. 1991)(Cudahy, J.), a plaintiff's notice of claim alleged that VA employees conspired to alter medical records. <u>See</u> 927 F.2d at 1012. The Seventh Circuit declined to allow a malpractice complaint to proceed because the allegations in the notice of claim and the complaint "involve[d] wholly distinct incidents." 927 F.2d at 1012.

The Defendants do not cite any cases finding notice inadequate where the plaintiff merely failed to name the correct physician or employee in its notice of claim. <u>Ham v. United States</u>, their closest case, involved three separate treatment incidents by three different dentists. <u>See</u> 2008 WL 818197, at *4. The Plaintiffs' case, on the other hand, involves three individuals who participated in a single incident. <u>Ham v. United States</u> would be on point if that plaintiff had failed to name all of the dentists involved in the first attempt to repair his teeth, but it is by no means clear that the court would have reached the same result.

Third, the notice here led the VA to investigate the entire incident. The notice requirement's "underlying purpose" is to "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." <u>Staggs v. United States ex rel. Dep't of Health &</u>

Human Servs., 425 F.3d at 885 (citing Bradley v. United States ex rel. Veterans Admin., 951 F.2d 268, 271 n.3 (10th Cir. 1991)(quotation marks omitted)).   For this reason, it is "only necessary that the agency be put on notice of the injury so that it may begin its own investigation of the matter."   Williams v. United States, 932 F. Supp. 357, 361 (D.D.C. 1996)(Lamberth, J.).

In this case, the VA had notice of the Plaintiffs' allegations because it conducted an investigation to determine whether Van Winkle "received good care from his other VA-employed providers."   First VA Letter at 1.   The investigation's scope went beyond Dr. Wood's actions to encompass Van Winkle's medical records and "interviews of medical personnel" involved in his care.   First VA Letter at 1.   The exhaustion requirement is not meant to be a litigation tactic employed after actual investigations into possible negligence.

The Court's opinion is consistent with those of other courts examining similar claims against the VA.   For example, in Campeau v. United States, No. 1:13-CV-3682-WSD, 2015 WL 1308282 (N.D. Ga. Mar. 23, 2015)(Duffey, J.), the plaintiff submitted a notice that included "the time, place, and manner of Decedent's death at the VA Medical Center, and contained all the information that the VA needed to be on notice of the potential theories of liability."   2015 WL 1308282, at *10.   The court cited that the VA had "actually investigated a wrongful death claim and denied the claim" in allowing the suit to go forward.   2015 WL 1308282, at *5.

## IV.   DESPITE THE PLAINTIFFS' LABELS, THEIR DECEMBER 2 LETTER TO THE VA SERVED AS A SEPARATE NOTICE OF CLAIM.

The Plaintiffs' December 2 Letter to the VA was a separate notice of claim despite its label for two reasons.   First, the Plaintiffs' labels are not controlling.   Second, the letter, as well as the follow-up correspondence, were completed and sent in a timely manner.   Gallegos thus exhausted her administrative remedies, even when suing in her personal capacity.

## A.   THE PLAINTIFFS' LABELS DO NOT CONTROL THEIR LETTER'S EFFECT.

The United States argues that the "Plaintiffs labeled their December 2, 2013 letter, as a 'supplement' to the notice of claim dated April 2, 2013, and later referenced it as an 'amendment,'" and that these labels should be controlling.  United States Reply at 4.  It notes that the "Plaintiffs cite no authority to support their claim."  United States Reply at 5.  When the Court asked whether the parties were "just quibbling over the heading here" at the hearing, however, the United States responded that "frankly, I think it's a good point."  Tr. at 6:11-15 (Court, Keegan).  The United States also fails to cite authority to support its claim that the Plaintiffs' labels should control.

The limited cases on point do not require the plaintiffs to use specific headings or labels for their notices of claims.  The FTCA requires the plaintiff to "present[] the claim" only to the appropriate agency.  See 28 C.F.R. § 14.2 (requiring "an executed Standard Form 95 or other written notification of an incident").  Courts generally disregard the labels attached to particular pieces of a plaintiff's notice of claim.  In Dynamic Image Technologies, Inc. v. United States, for example, the First Circuit examined the plaintiff's allegations "regardless of the labels employed in the amended complaint."  21 F.3d at 40.  This rule is consistent with the fact that "Congress did not intend to shield the federal fisc behind an impenetrable thicket of lawyerly technicalities."  221 F.3d at 40.  Courts considering FTCA claims must consider even ninety-word claims submitted by prisoners who are unlikely to give each notice or allegation a specific legal label.  See Coffey v. United States, 906 F. Supp. 2d at 1153-54.  Moreover, the formal defects in the Plaintiffs' notice did not change its substance -- the VA had adequate notice of the facts and amount claimed on December 2, 2013.

**B.     THE PLAINTIFFS PROPERLY REQUESTED RECONSIDERATION OF THE DECEMBER 2 LETTER'S CLAIMS.**

The timing of the Plaintiffs' various follow-up letters does not make this notice insufficient.  The United States questions whether Plaintiffs ever received a denial of the December 2 claim, and if so, whether they requested reconsideration.  See United States Reply at 5.

A close examination of the correspondence between the Plaintiffs and the United States undermines this argument.  The United States' December 9, 2013 letter could reasonably be described as a denial.  Its statement that "[t]here is no provision to amend a tort claim after this office has adjudicated the claim and issued a final decision" makes it clear that the United States would not consider the claim against the pharmacist any further.  Second VA Letter at 1.  The United States had, after all, already contended that "there was nothing VA employees acting in the course and scope of their employment with the Department of Veterans Affairs did or failed to do that caused any injury to Mr. Van Winkle."  First VA Letter at 1-2.

The Plaintiffs' December 10, 2013, letter also served as an effective appeal.  Although it "specifically stated that it was requesting reconsideration of the claim the VA had denied on June 19, 2013," United States Reply at 5-6, it also mentioned "the employees of the United States in the pharmacy" and their failure to exercise ordinary care "as set forth in my letter of December 2, 2013."  Request for Reconsideration at 1.  The underlying purpose of the notice requirement has been more than satisfied here -- the VA was well-aware of the Plaintiffs' argument against the unnamed pharmacist as early as December 2, 2013.  See Williams v. United States, 932 F. Supp. at 361 (holding that it is "only necessary that the agency be put on notice of the injury so that it may begin its own investigation of the matter").

### C.    GALLEGOS    EXHAUSTED    HER    ADMINISTRATIVE    REMEDIES THROUGH THE DECEMBER 2 LETTER.

The United States argues that Gallegos failed to exhaust her administrative remedies.  It states that she did not file a claim until April 24, 2014, noting: "The Agency has not made a final decision on Plaintiff Gallegos's claim and six months has [sic] not yet passed."  Motion at 12.  It cites Haceesa v. United States, 309 F.3d 722 (10th Cir. 2002)(Ebel, J.), in which a decedent's estate attempted to join a lawsuit after its six-month deadline to appeal the agency's final decision had expired.  See 309 F.3d at 734.  The Tenth Circuit concluded that the original notice did not provide "constructive notice sufficient to warrant government investigation of each claim." 309 F.3d at 734.

The Plaintiffs' December 2 Letter, however, mentions that "Mrs. Van Winkle, along with her daughter Jana [sic] Gallegos, seeks $600,000.00 in compensations [sic] for their injuries." December 2 Letter at 1.  The December 10 letter confirmed that "Teressa Janette Gallegos" was seeking compensation.  Request for Reconsideration at 1.  "Jana" Gallegos is Teressa Jannette Gallegos, and the United States was thus on actual and constructive notice of her claim.[18]

---

[18]Gallegos would remain a party even if the United States had no notice, because she sued "Individually and as Personal Representative of the ESTATE OF JOSEPH ORAN VAN WINKLE."  Amended Complaint at 1 (emphasis added).  Van Winkle successfully filed a notice of claim on April 2, 2013.  See April 2 Letter at 1.  The Court looks to New Mexico law to determine the effects of his death.  See Haceesa v. United States, 309 F.3d at 734 (referring to New Mexico tort law to determine the effects of a death on a plaintiff's administrative exhaustion).  In New Mexico, as in other states, a plaintiff's death does not extinguish his claim against a defendant.  See N.M. Stat. § 41-2-1 ("[T]he person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.").  Van Winkle's valid notice survived his death, so Gallegos exhausted her administrative remedies as the personal representative of Van Winkle's estate.

V.     **THE PLAINTIFFS' APRIL 23, 2014, LETTER WAS TOO RECENT TO PROVIDE SUFFICIENT NOTICE OF THEIR CLAIMS AGAINST DR. QUINTANA.**

The Plaintiffs' April 23, 2014, letter listing specific claims against Dr. Quintana was premature to provide sufficient notice.  <u>See</u> Final Letter at 1.  The Plaintiffs filed their Original Complaint and Amended Complaint before six months had passed after the April 23, 2014, date of their Notice of Claim.  <u>See</u> Original Complaint at 1; Amended Complaint at 1.  The FTCA's Section 2675(a) thus barred their negligence action.  <u>See</u> 28 U.S.C. § 2675(a) (barring negligence claims "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.").  The Plaintiffs do not fall within the "deemed denial" exception to this rule, because less than six months had passed when they filed each of their complaints.  <u>See</u> <u>Barnes v. United States</u>, 776 F.3d at 1139.  These faults, however, are irrelevant, thanks to the Court's conclusion that the Plaintiffs provided valid notice of their claims against Dr. Quintana in their April 2 Letter.

**IT IS ORDERED** that the Motion for Extension of Time to File Reply, filed November 18, 2014 (Doc. 59), is granted.  The Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed October 17, 2014 (Doc. 52), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Doug Perrin
The Perrin Law Firm
Santa Fe, New Mexico

   *Attorney for Plaintiffs*

Melissa A. Brown
Remo Gay
Brown & Gay, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Maureen Wood, M.D. and Medical Doctor Associates, LLC*

Damon P. Martinez
  United States Attorney
Ruth Fuess Keegan
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for Defendant United States of America*