IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESSA JANETTE GALLEGOS, Individually and
as Personal Representative of the ESTATE OF
JOSEPH ORAN VAN WINKLE, Deceased; and
MARY ANN VAN WINKLE,

        Plaintiffs,                                                      No. CIV 13-1055 JB/KBM

      vs.

MAUREEN WOOD, M.D.;
MEDICAL DOCTOR ASSOCIATES, LLC;
and the UNITED STATES OF AMERICA,

        Defendants.


**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION CLAIMS
BASED ON A PHARMACISTS' PURPORTED FAILURE TO FOLLOW VAMC PROTOCALS**

      Defendant United States of America moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss any claim against the United States based upon an allegation that a pharmacist failed to follow a Veterans Administration Medical Center ("VAMC") policy or procedure. Specifically, Defendant Wood has been pursuing through discovery a theory of liability against the United States that an outpatient pharmacist failed to comply with a VAMC pharmacy protocol in filling prescriptions Defendant Wood ordered for Mr. Van Winkle upon discharge. ECF Nos. 157 at 8, 157-3; Exhibit A (Deposition of Mark Looney, M.D., Plaintiff's liability expert, on May 27, 2016). This Court lacks subject matter jurisdiction because the United States was never notified of any such claim, and because there is no private party analogue for such a claim.

Plaintiffs indicated that they did not have sufficient time to analyze the issues raised herein to determine whether they oppose this motion. Defendants Maureen Wood, MD, and Medical Doctor Associates, LLC ("Defendants") oppose this Motion.

I. BACKGROUND

Plaintiffs filed this action against Defendant Wood, an independent contractor who provided medical care to Joseph Oran Van Winkle at the Albuquerque VAMC from May 7, 2012 to May 13, 2012, and against the United States. Plaintiffs allege that Defendant Wood failed to recognize that Mr. Van Winkle suffered from staph aureus, failed to prescribe appropriate antibiotics, and prematurely discharged Mr. Van Winkle. ECF No. 41. With respect to the United States, Plaintiffs claim states, in relevant part, that "[a] pharmacist . . . employed by the United States VA Medical Center accompanied Defendant Wood on her rounds of patients every day." Plaintiffs further allege that the pharmacist "should have known the results of the culture and that the drugs given to Mr. Van Winkle were not appropriate." ECF No. 41, ¶ 8.

Plaintiffs' expert, Dr. Looney, however, did not offer support for Plaintiffs' claims based on the actions of a pharmacist. Specifically, Dr. Looney opined that while the medications given to Mr. Van Winkle when hospitalized at VAMC in May 2012 were "inelegant," he acknowledged that those same medications were covering the staph aureus and were appropriate and effective under the circumstances. ECF No. 153-4 at 2 ("Dr. Wood failed at hospital discharge to initiate the appropriate antibiotic therapy. [Mr. Van Winkle] was during those five days on the various antibiotics that he was administered – he was covered for MSSA bacteremia."); Exhibit A at 2, 3 (deposition at 50-51, 59). Since the antibiotics given to Mr. Van Winkle in the hospital were appropriate and effective, the ICU pharmacist could not have been negligent in failing to tell

2

Defendant Wood that the same antibiotics were not appropriate or effective. Dr. Looney further testified that it is not the responsibility of the pharmacist who is filling a prescription to question "the indication" for the medication. Exhibit A at 4 (deposition at 98-99). Specifically, with respect to medication management of staph aureus, "the provider makes the decision on which antibiotics to administer, and then the pharmacist sort of picks it up from there and makes sure that the dosing is appropriate." *Id.* at 5 (deposition at 104). Dr. Looney further testified that he did not have any opinions regarding the actions of any Albuquerque VAMC pharmacists in connection with this matter. ECF No. 153-4 at 8 (deposition at 146-147).

Dr. Looney further opined that while the inpatient antibiotic therapy met the standard of care, Mr. Van Winkle "received an inadequate outpatient antibiotic therapy." Exhibit A at 3 (deposition at 59). As part of a strategy to blame someone else for her own errors in caring for Mr. Van Winkle, Defendant Wood[1] now claims that the pharmacist who filled the outpatient prescription failed to comply with a VAMC pharmacy protocol.

Defendant Wood laid out her theory of liability during the deposition of Plaintiff's expert, Dr. Looney. Exhibit A at 6-8. Defendants claim that the VAMC protocol "places an absolute burden on the pharmacy to know" the lab results and the diagnosis, to verify the accuracy of the attending's diagnosis, and to determine "the appropriateness of the prescribed drug." *Id*. Defendants make this argument, while at the same time acknowledging that the pharmacists lack

---

[1] Plaintiffs have made no claim that the United States was negligent in accurately filling the out-patient prescriptions ordered by Defendant Wood. Defendant Wood has not asserted any cross-claims against the United States (nor could she, for a number of reasons, including that she never filed a notice of claim). For this reason, it is questionable whether there even exists a pending claim against the United States based on the actions of the pharmacist in filling Mr. Van Winkle's out-patient prescription. However, since this has been a major focus of Defendant Wood's discovery, see e.g. ECF Nos. 149, 153, the United States files this motion.

the training to make such judgment. *Id.* at 7 (deposition at 112)(Dr. Looney states that pharmacist are not trained to "adjudicate the clinical diagnosis," to which statement defense counsel agreed). It is Defendants' theory that this VAMC pharmacy protocol imposes a duty on the pharmacist to "pick up the phone and say 'Dr. Wood, did you know this guy's got two out of two positive for staph aureus?'" *Id.* (deposition at 113-14). According to Defendants' counsel, "[b]ottom line, it sounds like pharmacists are being told per this protocol, 'Hey, you need to check these drugs as ordered and determine that the right thing is being given.'" *Id.* at 8 (deposition at 116).

Defendant Wood appears to claim that it is irrelevant whether the pharmacist actually reviewed the medical records and lab results or knew the diagnosis. Rather, Defendant Wood appears to be arguing that the pharmacist has a legal duty, because of the VAMC pharmacy protocol, to undertake a review and analysis of the medical records and lab results for each prescription the pharmacist fills and to determine whether the medication prescribed was the "right thing" to prescribe. *Id.* at 7 (deposition at 112). While the VAMC pharmacy protocol might be stretched as broadly as suggested by Defendants, failure to abide by the same protocol does not give rise to liability. This Court lacks subject matter jurisdiction over Defendant Wood's new claim.

## II.   MATERIAL FACTS

1.   This action arises out of medical care provided by Defendant Wood to the deceased, Joseph Oran Van Winkle, when hospitalized at the Raymond G. Murphy VA Medical Center ("VA") from May 7 to May 13, 2012.

2. With respect to the claims against the United States, Plaintiffs allege in relevant part:

> A pharmacist or representative of the pharmacy department employed by the United States VA Medical Center accompanied Dr. Wood on her rounds of patients every day. Such representative(s) should have known the results of the culture and that the drugs given to Mr. Van Winkle were not appropriate . . . because of the results of the culture, and that Mr. Van Winkle was . . . not []receiving the correct[] medication and should have so advised Dr. Wood.

ECF No. 41 at 4.

3. On April 10, 2013, Plaintiff Mary Ann Van Winkle and now deceased Joseph Oran Van Winkle filed a tort claim by letter dated April 2, 2013, alleging Defendant Wood prescribed the wrong antibiotics, failed to prescribe the antibiotics that would fight Mr. Van Winkle's staph aureus infection, prematurely released Mr. Van Winkle from the hospital, and upon discharge prescribed "a 5 day oral regimen of Ciprofloxacin and oral Keflex."  ECF No. 52-2.

4. Plaintiffs' counsel wrote to the VA on December 2, 2013, alleging that the pharmacist who attended rounds with Defendant Wood should have known the results of the culture and therefore should have known that Mr. Van Winkle was receiving the wrong drugs for his condition:

> We have learned since the April 2, 2013 letter was written, that a pharmacist or representative of the pharmacy department at the VA Hospital in Albuquerque accompanies physicians on their rounds of patients every[]day. This means, of course, that a pharmacist should or would have been with Dr. Wood and other treating physicians when Mr. Van Winkle was being seen in rounds each day. The pharmacist therefore should have known that the drugs being given to Mr. Van Winkle did not properly 'match up' with his condition and the pharmacist should have known the results of the culture, and therefore should have known that Mr. Van Winkle was receiving the wrong drugs for his condition. . . .

ECF No. 52-4.[2]

5. Plaintiffs' notices focus on the care Albuquerque VAMC provided to Mr. Van Winkle during his May 2013 hospitalization. No notice alleged that the pharmacist filling *outpatient* medications, who never examined Mr. Van Winkle and did not follow Mr. Van Winkle's hospital care, was negligent or caused Plaintiffs' damages. Rather, all of Plaintiff's allegations of negligence regarding the Albuquerque VAMC were limited to facts and circumstances surrounding *Mr. Van Winkle's May 2012 hospitalization*. ECF Nos. 52-2, 52-4.

6. Mr. Van Winkle's discharge antibiotics "for infection" and dressing, bandages, and other supplies to treat an "affected area" were filled by pharmacist Amber Ramnarace-McKinley and were picked up at the pharmacy window. Exhibit B.

### III. POINTS AND AUTHORITY

This lawsuit is brought pursuant to the Federal Tort Claims Act (FTCA), which governs tort actions against the United States. 28 U.S.C. § 2671, *et seq*. The United States, as a sovereign, is immune from suit unless it waives sovereign immunity and consents to be sued. *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006); *Garcia v. United States*, 709 F. Supp. 2d 1133, 1137 (D.N.M. 2010)(Browning, J.).

"The FTCA waives the United States sovereign immunity in certain specific tort actions against the United States for money damages." ECF No. 114 (*Gallegos v. Wood*, No. CIV 13-

---

[2] The United States acknowledges that this Court held that the claims raised in Plaintiff's December 2, 2013, letter were adequately covered in Plaintiff's original notice of claim. ECF No. 76. This Motion is not intended to address the Court's prior decision, but is limited to what appears to be Defendant Wood's new allegation that a pharmacist failed to contact Defendant Wood regarding an outpatient prescription.

1055 JB/KBM, 2016 WL 1426554, at *16 (D.N.M. Mar. 31, 2016) (hereinafter "March 31, 2016 Memorandum Opinion")).

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C.A. § 2674. And this Court's jurisdiction over claims against the United States is similarly limited:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages. . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b).

Because the FTCA is a limited waiver of sovereign immunity, it is strictly construed. *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). Absent an express waiver of sovereign immunity, federal courts lack subject matter jurisdiction. *Harrell*, 443 F.3d at 1234. Sovereign immunity cannot be extended except by the legislature. *Kubrick*, 444 U.S. at 117-18.

The party averring jurisdiction bears the burden of proof and must establish that the court possesses subject-matter jurisdiction. *Kokkonen v. Guardian Live Ins. Co.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83, 189 (1936) (holding that the party asserting jurisdiction may not be relieved of the burden of showing that he is properly in court). The

presumption is that a cause lies outside the limited jurisdiction of the federal courts. *Kokkonen*, 511 U.S. at 377.

A.  Standard of Review

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may take the form of a facial attack on the complaint's allegations as to subject matter jurisdiction, or a question as to the sufficiency of the complaint. *Id.* In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.* It may also take the form of a challenge of the facts upon which subject matter jurisdiction depends. *Id.* at 1003. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.*

A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id., citing Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir. 1987). When the court considers evidence outside the pleadings, it need not necessarily convert the motion to a Rule 56 motion. *Id.* Only when the jurisdictional question is intertwined with the merits of the case is the Court required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion. *Id.* The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case. *Id.*

B.     <u>This Court Lacks Subject Matter Jurisdiction Because Plaintiffs And Defendants Failed To Exhaust Their Administrative Remedies.</u>

This Court does not have subject matter jurisdiction over a claim based on a pharmacist filling Mr. Van Winkle's outpatient medication because neither Plaintiffs, nor the other Defendants have exhausted administrative remedies for such a claim.

As a prerequisite to filing suit against the government, pre-suit administrative steps are required by law:

> An [FTCA] action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675 (a). This exhaustion requirement is jurisdictional and cannot be waived. *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016).

The administrative claim must contain sufficient details to give due notice to the agency that it should investigate the possibility of particular conduct. *Estate of Trentadue v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). This Court observed that the Tenth Circuit requires that the notice contain "extensive information," citing *Staggs v. U.S. ex rel. Dep't of Health & Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005). ECF 76 at 30-31 (*Gallegos v. Wood*, No. CIV 13-1055 JB/KBM, 2015 WL 6393561, at *17 (D.N.M. Oct. 1, 2015), hereinafter "October 1, 2015

9

Memorandum Opinion").[3]   The Tenth Circuit describes the notice requirement as "eminently pragmatic."   *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005).

Regardless of the label employed, the notice must contain sufficient details about the factual basis of the claim and the injuries alleged to alert the agency of the need to investigate the claim.   *See e.g.*, *Gladden v. U.S. Dep't of Justice*, 18 F. App'x 756, 758 (10th Cir. 2001) (statement that claim was "in excess of $100,000.00" did not satisfy sum certain requirement)*; Lopez*, 823 F.3d at 976 (claim of medical malpractice did not provide the VA with sufficient notice of a claim based on negligent credentialing); *Staggs*, 425 F.3d at 885 (rejecting the plaintiff's claim that the informed consent claim was "inherent" in "her claim that accused the hospital of a 'substantial departure from the standard of care' and the 'negligent management of [her] pregnancy [and] labor[,]'" and instead concluding that "given the length and factual specificity of Staggs' description of her claim without a mention of 'consent' or a suitable synonym, DHHS could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary."). "[I]t is not the government's obligation to cast about in the wilderness for every possible source of liability lurking in an administrative claim; rather, the language of the claim itself must serve as a competent guide that, at very least, points the agency to the correct areas of inquiry."   *Benally*

---

[3] Although this Court has observed that some courts, including the Tenth Circuit, require "the claimant to provide extensive information about the injuries alleged in the complaint," October 1, 2015, Memorandum Opinion, 2015 WL 6393561, at *17, it nevertheless noted that it is "more generous," *id.*, 2015 WL 6393561, at *18 (relying on one of this Court's earlier decision in stating "[o]ther courts have been more generous . . .").

*v. United States*, No. 13-CV-0604-MV-SMV, 2016 WL 3200125, at *4 (D.N.M. May 20, 2016). *See also*, *Begay v. United States*, No. CV 15-0358 JB/SCY, 2016 WL 3124630, at *39, --- F. Supp. 3d --- (D.N.M. May 18, 2016) (notice of claim for negligent supervision, hiring, credentialing of one medical provider did not provide notice of claims regarding the same with respect to other medical providers).

Whether an administrative claim is sufficient to meet the requirements of 28 U.S.C. § 2675(a) is a question of law. *Staggs*, 425 F.3d at 884.

Here, Plaintiffs' notices of claims focused on the care provided to Mr. Van Winkle when hospitalized at the Albuquerque VAMC. Plaintiffs never stated nor implied that the Albuquerque VAMC was negligent in filling Mr. Van Winkle's prescription after he was discharged from the hospital.[4] Nor was such a claim considered by Albuquerque VAMC when investigating Plaintiffs' claims. Allowing this new claim to go forward would undermine the very purpose of the notice requirement—to afford the government a "fair opportunity to investigate and possibly settle the claim before the parties must assume the burden of costly and time-consuming litigation." *McNeil*, 508 U.S. at 111-12.

In general, the scope of FTCA litigation cannot be expanded by adding claims not included in the administrative claim. *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011 (7th Cir. 1991). Although an administrative claim need not put forth legal theories in order to satisfy section 2675(a), *see Bush v. United States*, 703 F.2d 491, 494 (11th Cir. 1983), a plaintiff cannot "present one claim to the agency and then maintain suit on the basis of a different set of facts." *Dynamic*

---

[4] Plaintiff's expert's opinions were likewise limited to May 2017 hospitalization. ECF No. 153-4 at 7.

11

*Image Techs., Inc. v. United States*, 221 F.3d 34 (1st Cir. 2000); *Dundon v. United States*, 559 F. Supp. 469, 476 (E.D.N.Y. 1983); *Ham v. United States*, Civ. No. 07-29E, 2008 WL 818197, at *4 (W.D. Pa. Mar. 26, 2008) (allegations of negligence of one dentist insufficient to put agency on notice of allegations of negligence by another dentist).  The VA could not have known that Plaintiffs (or apparently Defendant Wood) were claiming that a pharmacist should have contacted Defendant Wood about an outpatient prescription.

In this Court's previous opinion, it held that Plaintiffs' original notice of claim dated April 2, 2013, ECF No. 52-2, was sufficient to provide notice of the claims raised in the Amended Complaint against the United States, namely (1) that the pharmacist attending rounds with Defendant Wood when Mr. Van Winkle was hospitalized "should have known the results of the culture and that the drugs given to Mr. Van Winkle were not appropriate for his treatment" and should have altered Defendant Wood of the same and (2) that Dr. Quintana was informed "that both bottles cultured were positive for staph aureus," but failed to inform Defendant Wood, ECF No. 41, ¶¶ 8, 9.  October 1, 2015, Memorandum Opinion, 2015 WL 6393561, at *20.

This Court described Plaintiff's April 2, 2013, letter as follows:

> The April 2 Letter explains that the underlying events began on May 7, 2012. . . .  It describes the course of treatment and the nature and the extent of the injury, and includes a demand for $600,000. . . .  The letter focuses on Dr. Wood's conduct, explaining: "What should have been treated simply and effectively turned into a very complex, dangerous situation as a result of the negligence of Dr. Wood in misdiagnosis, resulting in improper and inadequate treatment." . . .  It makes one reference to unidentified "multiple physicians who followed Mr. Van Winkle." . . .  It uses passive voice, however, to avoid attributing actions to specific individuals.  *See* April 2 Letter at 2-3 ("Zosyn was never ordered nor administered . . . ."); *id.* ("Mr. Van Winkle was discharged . . . ."); *id.* ("Upon discharge, Mr. Van Winkle was given . . . .").  It also includes a list of "witnesses," including Van Winkle's family and over one hundred medical providers who could have been involved in Mr. Van

>   Winkle's care. . . .   The list of medical providers includes "Chris Quintana" and at least one pharmacist. . . .

*Id.*, at *3.

In this Court's opinion, it noted that a plaintiff cannot avoid the notice requirement by attempting "to unify a series of separate incidents," *citing Salas v. United States*, 527 F. App'x 813 (10th Cir. 2013); *Deloria*, 927 F. 2d 1009; and *Ham*, 2008 WL 818197.  October 1, 2015, Memorandum Opinion, 2015 WL 6393561, at *21.  With respect to the claims arising out of Dr. Quintana's purported failure to notify Defendant Wood of the lab results and Dr. Ward's purported failure to notify Defendant Wood that the prescriptions ordered did not effectively treat Mr. Van Winkle's condition, the Court held that these claims "involve[] three individuals who participated in a single incident."  *Id.*  The Court also found that the notice "led the VA to investigate the entire incident."  *Id.*  Following this logic, the hospitalization was viewed as a single incident.[5]

Defendant Wood now claims that a pharmacist, who is alleged to have only filled an outpatient prescription for Mr. Van Winkle, which was picked up at the pharmacy window once Mr. Van Winkle was discharged from the hospital, was purportedly negligent for violation of a VAMC pharmacy protocol.  Defendant Wood does not claim that this pharmacist attended rounds with her or otherwise participated in care provided to Mr. Van Winkle.  Defendant

---

[5] The United States' position was that Defendant Wood's purported negligence could not be combined with Dr. Quintana's and Dr. Ward's purported negligence to create a "single incident." While the Court held that the United States' position was wrong, it does not follow that the United States filed its Motion to Dismiss For Lack of Subject Matter Jurisdiction as "a litigation tactic."  October 1, 2015, Memorandum Opinion, 2015 WL 6393561, at *21.  The undersigned is obligated to raise jurisdictional arguments in defense of the public fisc when there is a good-faith argument to do so.  Congress, not the undersigned, waives the United States' sovereign immunity.

Wood does not claim that this same pharmacist actually knew anything about Mr. Van Winkle's condition beyond that indicated on Defendant Wood's prescription orders. The pharmacist's name was not on the list of providers provided by Plaintiffs with the notices of claim. Compare Exhibit B with ECF No. 552-2 at 4. Rather, after Defendant Wood ordered the medication and discharged Mr. Van Winkle from the hospital, the pharmacist filled the prescription. This was a separate incident for which the VA was never provided a notice of claim and the VA never investigated.

*Benally v. United States*, No. 13-CV-0604-MV-SMV, 2016 WL 3200125 (D.N.M. May 20, 2016) (Vasquez, J.) is factually indistinguishable from this matter.[6] In *Benally*, the plaintiff submitted a notice of claim stating:

> On November 23, or thereabouts, Helen Benally underwent surgery at the Gallup Indian Medical Center in New Mexico. She had a total hip replacement (left hip). The new hip failed after some months passed. The hip replacement equipment gave way and separated, causing severe pain, and serious mobility problems. The surgery at GIMC was performed negligently, below the standard of care. Further surgery became necessary.

And an "amended" notice stating:

> On November 23, 2008, or thereabout, Helen Benally underwent surgery on her left hip surgery [sic] at the Gallup Indian Medical Center in New Mexico. Ms. Benally's left hip surgery was mishandled causing Ms. Benally severe pain and serious mobility programs [sic]. The surgery at GIMC was performed negligently and below the standard of care, causing permanent damage. Further surgery became necessary.

*Benally*, 2016 WL 3200125, at *1. The United States moved to dismiss the plaintiff's claim that the post-surgical care was negligent. In granting the Motion, the Court found *Salas* persuasive.

---

[6] The plaintiff appealed the decision to the Tenth Circuit on July 13, 2016.

Judge Vasquez, in *Benally*, held that Benally did not provide notice of a claim based upon purported inadequate post-operative care. *Benally*, 2016 WL 3200125, at *3 ("Nowhere in Plaintiff's two submissions to HHS does she mention anything about the quality of the post-operative care that she received, nor does she aver any facts from which the United States could have concluded that Plaintiff believed that the post-operative care provided to her contributed to her injuries."). Judge Vasquez concluded, "the administrative claims submitted to HHS do not fairly raise the issue of negligent post-operative care in a manner that would have given notice to HHS." *Benally*, 2016 WL 3200125, at *4. *See also, Franklin v. United States*, 12-cv-01167, at 15-18 (D.N.M. February 18, 2014) (notice that states the United States failed to realize and correct that Dr. Wilder had cut, and subsequently blocked, the left ureter, with a stitch related to the hysterectomy procedure" and reference to the fact that, just before the surgery, the plaintiff had been diagnosed with invasive cancer, did not provide notice of claims based on pre-surgery conduct); *Shaffer v. Shinseki*, No. CIV. A. 07-298, 2009 WL 304251, at *10 (W.D. Pa. Feb. 9, 2009) (plaintiff must exhaust each "incident" even if the incidents are "merely a continuation of the tortious pattern of conduct described in the notice of claims). Since Plaintiffs (and/or Defendants) failed to give the United States notice of this latest claim, it should be dismissed.

C. <u>The United States Has Not Waived Sovereign Immunity For Claims Based On Violation Of Government Rules or Regulations.</u>

The FTCA was intended to waive sovereign immunity for certain types of cases—it was not intended to "spur the creation of new causes of action. . . ." March 31, 2016, Memorandum Opinion, 2016 WL 1426554, at *17. Accordingly, the "United States' liability is coextensive with that of private individuals under the respective States' law." *Id.*, at *18; *Pappas v. United States*,

15

617 F. App'x 879, 881 (10th Cir.), *cert. denied*, 136 S. Ct. 595 (2015).   For this reason, "[i]t is axiomatic that 'the violation of a federal regulation in and of itself is not a basis for liability under the FTCA.'"   *Pappas*, 617 F. App'x at 881.   "Even if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons."   *Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995); *Portenier v. United States*, 520 F. App'x 707, 716, n.8 (10th Cir. 2013) (denying liability under FTCA based on violation of Department of Army's Protocol for Child Abuse and Neglect, the court noted "[f]or there to be a viable claim under the FTCA, the liability must flow from a violation of an obligation imposed by state law"); *Mecca v. United States*, 389 F. App'x 775, 779 (10th Cir. 2010) ("Dr. Mecca's reliance on a federal regulation, without any analogous state law duty, failed to bring the first seven claims within the scope of the FTCA's waiver of sovereign immunity and thus failed to invoke the court's jurisdiction.").

An agency's internal policy does not, by itself, give rise to state law tort duties. *Klepper v. City of Milford*, 825 F.2d 1440, 1448 (10th Cir. 1987); *United States v. Agronics Inc.*, 164 F.3d 1343 (10th Cir. 1999).   And New Mexico has not adopted VAMC pharmacy protocols as setting forth the duty of care in New Mexico, nor has it recognized a legal duty on the part of a pharmacist to, in addition to accurately filling the prescription, (1) undertake a review a patient's medical records to ascertain for what condition the medication is being prescribed; (2) determine if the diagnosis was correct; or (3) determine whether the medication prescribed is appropriate for the correct diagnosis.

This Court's March 31, 2016, Memorandum Opinion clarifies a pharmacist's duty of care in New Mexico.   The Court held that the Amended Complaint stated a claim for which a private

person could be held liable by alleging that a pharmacist attended daily rounds, "likely reviewed specific patients' charts," and "should have known the results of the culture and that the drugs given to Mr. Van Winkle were not appropriate for his treatment because of the results of the culture."  March 31, 2016 Memorandum Opinion, 2016 WL 1426554, at *27.  The Court focused on one important allegation—the pharmacist was alleged to have knowledge of Mr. Van Winkle's medical history and condition.  *Id.*  ("The unique nature of this case, particularly the pharmacist's proximity to the patient and the prescribing physician, set it apart from cases in which a pharmacist mechanically fills a prescription.").  This allegation is missing in Defendants' new theory of recovery.

As this Court noted, New Mexico courts have not recognized a duty of a pharmacist beyond the duty to accurately fill a prescription.  March 31, 2016, Memorandum Opinion, 2016 WL 1426554, at *27 ("[O]ther jurisdictions have held pharmacists liable for prescribing contraindicated drugs even when a physician prescribes them.").  And this Court has held that it doubts the Supreme Court of New Mexico would adopt the doctrine of learned-intermediary, as adopted in other states that have recognized an expanded duty of care for pharmacists.  *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1214 (D.N.M. 2008).  The inquiry should end there and compels dismissal of Defendants' new claim.  *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (judicial restraint requires federal courts to avoid liberal interpretation of federal or state law which might expand government's waiver of sovereign immunity without congressional approval).

Moreover, the United States is unaware of any state that imposes a duty on a pharmacist to look past what is written on the face of the prescription, what a reasonable pharmacist should

know about the medication being prescribed, and what the pharmacist actually knows about a patient.  See March 31, 2016, Memorandum Opinion, 2016 WL 1426554, at *27 and cases cited therein.   For example, this Court noted that some courts have imposed liability for failure to be alert to "clear errors or mistakes in the prescription;" failure to warn the patient or notify the doctor of "obvious inadequacies appearing on the face of the prescription;" failure to address "over frequent refill authorizations;" failure to address contraindications when "it was undisputed that a plaintiff had informed the pharmacy of health problems which contraindicated the use of the drug in question."  Id.   But the United States is unaware of any decision that holds that a pharmacist has a duty to independently research and analyze the patient's medical history to determine whether the medication prescribed was appropriate to treat the condition. Since a private individual would not be liable under similar circumstances, this Court lacks subject matter jurisdiction.

## IV.   CONCLUSION

Because Plaintiffs failed to exhaust their administrative remedies based on any claims arising out of the actions of a pharmacist in connection with an outpatient prescription, and because there is no private person analogue, this Court lacks subject matter jurisdiction over any such claim.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

*/s/ Ruth F. Keegan 9/23/16*
RUTH FUESS KEEGAN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico    87103
(505) 346-7274; Fax: (505) 346-7205
Ruth.F.Keegan@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2016, I filed the foregoing pleading electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

Doug Perrin:    dougperrin@perrinlaw.org
Remo E. Gay, Jr.:    rgay@brownandgay.com


*Ruth F. Keegan, 9/23/16*
RUTH FUESS KEEGAN
Assistant United States Attorney