IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESSA JANETTE GALLEGOS, Individually and
as Personal Representative of the ESTATE OF
JOSEPH ORAN VAN WINKLE, Deceased; and
MARY ANN VAN WINKLE,

      Plaintiffs,                                              No. 13-cv-1055 JB/KBM

      v.

MAUREEN WOOD, M.D.;
MEDICAL DOCTOR ASSOCIATES, LLC;
and the UNITED STATES OF AMERICA,

      Defendants.

### THE UNITED STATES OF AMERICA'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT ON
### CLAIMS BASED ON THE ACTIONS OF THE ALBUQUERQUE
### <u>VAMC PHARMACISTS AND MEMORANDUM IN SUPPORT</u>

Defendant United States of America moves for summary judgment on the VAMC pharmacy claims. Plaintiffs allege that a VAMC pharmacist, who went on rounds with Dr. Wood "every day," should have advised Dr. Maureen Wood that the medications she prescribed were "not appropriate." (Doc. 41 at ¶ 8.) The Court has distinguished the "unique" situation of a pharmacist's attending daily rounds from "cases in which a pharmacist mechanically fills a prescription." (Doc. 114 at 53.) The Court further explained that "[e]xpert testimony and discovery will help the Court to make this determination [regarding the duty of care] at a later stage in the case." (*Id.*)

The Court should grant the United States' motion, because Plaintiffs' pharmacist "rounds"

theory is fundamentally flawed.  First, Plaintiffs have not provided expert opinion to substantiate the pharmacist "rounds" claim.  Second, Plaintiffs' medical expert testified that the IV antibiotics administered during Mr. Van Winkle's hospitalization were appropriate, so there could not be a breach of the standard of care by the VAMC pharmacist during the hospitalization.  Third, there was no VAMC pharmacist attending rounds with Dr. Wood on the day that Dr. Wood discharged Mr. Van Winkle from the hospital.  Accordingly, the VAMC pharmacist who went on rounds with Dr. Wood did not breach the standard of care.

As a backup theory, Plaintiffs allege that the VAMC pharmacy failed to comply with its internal protocols.  In particular, they allege that the pharmacist who filled Mr. Van Winkle's discharge prescription – one who "mechanically fill[ed] a prescription" (Doc. 114 at 53) – should have ensured that Dr. Wood had prescribed the right medication.  (*See* Doc. 188.)  This "VAMC protocol" theory suffers from similar infirmities.  First, Plaintiffs did not provide any pharmacy expert opinion to substantiate this theory.  Accordingly, Plaintiffs have not supported the theory regarding the VAMC protocol and the purported state law analogue.  Second, they have identified no evidence that the VAMC pharmacist who filled Mr. Van Winkle's discharge prescription knew for which infection the antibiotics were being prescribed.  Thus, the Court should grant the United States' motion.

Plaintiffs have not consented to the subject Motion.  Defendants Maureen Wood, M.D. and Medical Doctor Associates, LLC ("Defendants") oppose this Motion.

## BACKGROUND

Plaintiffs filed this action against Defendant Maureen Wood, M.D., an independent contractor who provided medical care to Mr. Joseph Oran Van Winkle at the Albuquerque VAMC from May 7, 2012 to May 13, 2012; against Medical Doctors Associates, LLC, a medical job

placement company; and against the United States. Plaintiffs allege that Dr. Wood failed to recognize that Mr. Van Winkle suffered from staph aureus, failed to prescribe appropriate antibiotics, and prematurely discharged Mr. Van Winkle from the hospital. (Doc. 41 at ¶¶ 6-7 & 11.) In particular, Plaintiffs contend that instead of discharging Mr. Van Winkle with a prescription of oral antibiotics, Dr. Wood should have treated Mr. Van Winkle in the hospital with several additional weeks of IV antibiotics. (*Id*. at ¶ 15.)

With respect to the claim against the United States, Plaintiffs allege, in relevant part, that "[a] pharmacist . . . employed by the United States VA Medical Center accompanied Dr. Wood on her rounds of patients every day." (*Id*. at ¶ 8.) Plaintiffs further contend that the pharmacist "should have known the results of the culture and that the drugs given to Mr. Van Winkle were not appropriate." (*Id*.) In a shifting sands approach, Plaintiffs and Defendants have further argued that VAMC pharmacists may be held liable for a violation of an internal VAMC pharmacy protocol. (Doc. 188.)

## GOVERNING LAW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal citations and quotation marks omitted).

The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee

of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The "law of the place" requirement is not satisfied by "violations of federal regulations or statutes that do not impose duties analogous to those imposed by local law." *Custodio v. United States*, 866 F. Supp. 479, 484 (D. Colo. 1994). Accordingly, the violation of a federal regulation in and of itself is not a basis for liability under the FTCA. *See Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 973 (10th Cir. 1994). Rather, there must be "some other duty under the applicable state law," such that the United States will be liable "in the same manner and to the same extent as a private individual under like circumstances." *Klepper v. Milford*, 825 F.2d 1440, 1448 (10th Cir. 1987). The relevant "law of the place" here is New Mexico. (*See* Docs. 82 & 41.)

This Court has explained that the claim against the United States based on the actions of its pharmacists would be for medical malpractice. (Doc. 114 at 49.) A claimant for recovery founded on negligence in New Mexico must establish the following elements: "(1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, *22, 335 P.3d 1243, 1249; *accord Holley v. Evangelical Lutheran Good Samaritan Soc.*, 588 F. App'x 792, 794 (10th Cir. 2014) ("To recover for negligence in a medical malpractice case governed by New Mexico law, Plaintiffs had to establish that: (1) [Defendant] owed [Plaintiff] a duty recognized by law; (2) [Defendant] breached that duty; and (3) the breach proximately caused [Plaintiff]'s death").

4

"New Mexico requires a plaintiff to use expert testimony 'in most medical malpractice suits' to prove each element of a negligence claim. *Holley*, 588 F. App'x at 795; *see Dinkel v. Cranecare, Inc.*, No. 09-cv-0388, 2011 WL 13118104, *9 (D.N.M. Apr. 5, 2011) ("New Mexico courts have generally required expert testimony in professional malpractice actions, including actions against medical doctors, lawyers, and architects."). This is because "medical malpractice actions often involve 'technical and specialized subject matter' . . . that is not within the 'common knowledge ordinarily possessed by an average person'." *Holley*, 588 F. App'x at 795 (internal citations omitted). The exception is when the subject matter of a malpractice action falls within the "average layperson's 'common knowledge'." *Id.*

"A party seeking a recovery . . . has the burden of proving every essential element of the claim . . . by the greater weight of the evidence," which simply means "that something is more likely true than not true." *Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, *17, 256 P.3d 29, 36 (quoting NMRA, Civ. UJI 13-304).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Mr. Joseph Oran Van Winkle was hospitalized at the Raymond G. Murphy VA Medical Center ("VAMC") on May 7 to May 13, 2012. (Depo. of Maureen Wood, M.D., dated July 1, 2016, at 120 & 133.) (Ex. D.)

2. Defendant Maureen Wood, M.D. was Mr. Van Winkle's attending physician. (*Id.* at 28.)

3. Dr. Wood was an independent contractor. (Depo. of Maureen Wood, M.D., dated Jan. 13, 2014, at 22.) (Ex. C.)

4. Plaintiffs' medical malpractice claims against the United States do not arise from the conduct of Dr. Wood. (Doc. 76 at 3) ("Plaintiffs no longer make claims against the United

5

States based on Dr. Wood's conduct.")

5. With respect to the claims against the United States, Plaintiffs allege in relevant part:

> A pharmacist or representative of the pharmacy department employed by the United States VA Medical Center accompanied Dr. Wood on her rounds of patients every day. Such representative(s) should have known the results of the culture and that the drugs given to Mr. Van Winkle were not appropriate . . . because of the results of the culture, and that Mr. Van Winkle was . . . not []receiving the correct[] medication and should have so advised Dr. Wood.

(Doc. 41 at ¶ 8.)

6. Alex Ward, Pharm.D., was a VAMC pharmacist who was assigned to the ICU, and who attended rounds in the ICU with Dr. Wood on May 7-11, 2012. (Deposition of Alex Ward, Pharm.D., dated May 6, 2016, at 7, 12-13, 28, 36, 150-51) (Ex. E.)

7. During Mr. Van Winkle's hospitalization at the Albuquerque VAMC in May 2012, until Dr. Wood discharged Mr. Van Winkle on oral antibiotics, Mr. Van Winkle received appropriate antibiotics and care. (Depo. of Mark Looney, M.D., at 49-51) (Ex. A) (filed with Doc. 218.)

8. Alex Ward did not work at the VAMC on May 12 or 13, 2012. (Ex. E at 150-51.)

9. Dr. Wood discharged Mr. Van Winkle on Sunday, May 13, 2012. (Ex. D at 54; Ex. F at 2.)

10. There was not a pharmacist assigned to ICU attending rounds with Dr. Wood on Sunday, May 13, 2012. (Ex. E at 164-65.)

11. Mr. Van Winkle's discharge prescriptions were filled by pharmacist Amber Ramnarace-McKinley. (VAMC pharmacy records, produced on Aug. 19, 2016) (Ex. G at 1)

12. Mr. Van Winkle's discharge prescriptions were picked up at the pharmacy window.

(Ex. G at 1)

13.     Upon discharge, Mr. Van Winkle had a wound that required regular saline wash and bandage replacement.   (Ex. F at 4-5; Ex. G at 6-8) ("Sodium Chloride 0.9% Soln, IRRG 0.9%"; "Irrigate as directed affected area every other day") ("Use bandage every other day").

14.     Mr. Van Winkle's discharge prescriptions included saline and gauze to treat an "affected area."   (Ex. G at 6-11.)

15.     Dr. Maureen Wood indicated that the prescriptions for Ciprofloxacin and oral Cephalexin (Keflex) were for "infection," without specifying for which infections the antibiotics were ordered.   (Ex. G at 1-4.)

16.     There is no evidence that Amber Ramnarace-McKinley knew what infection Dr. Wood was treating with the antibiotics she had ordered.   (*See* Ex. G) (prescriptions, referring, *e.g.*, to "infection," and to injury with "affected area".)

17.     Plaintiffs, Dr. Wood, and MDA do not allege, and have identified no evidence, that a pharmacist at Albuquerque VAMC inaccurately filled medications for Mr. Van Winkle.   (Docs. 41, 46 & 47.)

18.     Plaintiffs, Dr. Wood, and MDA do not allege, and have identified no evidence, that a pharmacist at Albuquerque VAMC failed to warn Mr. Van Winkle of harmful side effects of medications.   (Docs. 41, 46 & 47.)

19.     Plaintiffs, Dr. Wood, and MDA do not allege, and have identified no evidence, that a pharmacist at Albuquerque VAMC failed to be alert to clear errors on the face of the prescription. (Docs. 41, 46 & 47.)

20.     Plaintiffs, Dr. Wood, and MDA do not allege, and have identified no evidence, that a pharmacist at Albuquerque VAMC too frequently re-filled a medication prescription for Mr. Van

Winkle.  (Docs. 41, 46 & 47.)

21.    Dr. Looney, Plaintiffs' medical expert, testified that it is not the responsibility of the pharmacist to "adjudicate the clinical diagnosis."  (Ex. A at 98-99, 112.)

22.    Dr. Looney, Plaintiffs' medical expert, testified that it is not the responsibility of the pharmacist to question the indication for the administration of medication.  (Ex. A at 98-99, 112.)

23.    Plaintiffs did not designate a pharmacy expert or serve a pharmacy expert report. (*See* Pls.' Second Amended Disclosures, dated Jan. 15, 2016; Pls.' Third Amended Disclosures, dated Aug. 3, 2016) (disclosing, respectively, expert reports of Mark Looney, M.D., and Byron Lee, M.D.)

24.    Dr. Wood and Medical Doctors Associates did not timely designate a pharmacy expert and did not timely serve a pharmacy expert report.  (*See* Dr. Wood and MDA's Second Suppl. Disclosures, dated Aug. 22, 2016) (disclosing expert report of Neal Shadoff, M.D); (*see* Docs. 87, 156 & 200.)

25.    Dr. Looney, Plaintiffs' medical expert, testified that the only people at the VAMC who were negligent were Dr. Wood and Dr. Quintana, if he failed to alert Dr. Wood regarding the lab results.  (Ex. A at 59, 92-93, 112, 144-47.)

26.    Dr. Wood testified that the VA pharmacist, nurse practitioner, and physician's assistant were not responsible for discharging Mr. Van Winkle from the hospital on May 13, 2012; that they were not responsible for prescribing oral antibiotics upon discharge; and that the other person at the VAMC who was negligent was Dr. Quintana, due to the purported failure to provide lab results.  (Ex. D at 56, 59-60 & 104.)

//

## ANALYSIS

### I. PLAINTIFFS' PHARMACIST "ROUNDS" THEORY FAILS AS A MATTER OF LAW.

Plaintiffs allege that that the VAMC pharmacist who attended rounds with Dr. Wood should have recognized that Dr. Wood was not prescribing medication that was effective to treat Mr. Van Winkle's staph infection.

Plaintiffs' principal theory against the VAMC pharmacy is fatally defective, because it is unsupported by expert opinion or evidence. New Mexico law requires a plaintiff to use expert testimony "in most medical malpractice suits" to prove all the elements of negligence: "to establish a standard of care, to assess the [healthcare provider's] performance in light of the standard, and to prove causation." *Holley*, 588 F. App'x at 795. Plaintiffs have not provided a pharmacy expert opinion to establish the elements of (1) the standard of care, (2) breach of the duty of care, or (3) causation. Moreover, the evidence shows that Alex Ward, the VAMC pharmacist who attended rounds with Dr. Wood, did not breach the standard of care. Plaintiffs' medical expert testified that Dr. Wood prescribed appropriate IV antibiotics for Mr. Van Winkle on the days that Alex Ward attended ICU rounds. (UMF ¶¶ 6-7.) Accordingly, there was no reason for Alex Ward to challenge Dr. Wood's treatment plan.

**A. Plaintiffs Have Offered No Expert Opinion to Substantiate the Standard of Care.**

Plaintiffs have failed to offer an expert opinion to explain the substance of the duty of care for the VAMC pharmacist "rounds" theory. *See Holley*, 588 F. App'x at 795; *Holzem v. Presbyterian Healthcare Servs.*, 2013-NMCA-100, *13, 311 P.3d, 1198, 1202 ("The testimony of a medical expert is generally required when a physician's standard of care is being challenged in a medical negligence case."); *Hudson v. United States*, 636 F. Supp. 2d 827, 831 (W.D. Wis. 2009), *aff'd*, 375 F. App'x 596 (7th Cir. 2010) ("Without any expert testimony regarding the standard of

care regarding the prescription of phenytoin for the treatment of seizure disorders, plaintiff cannot prevail on his claim.").

In this case, the Court found that "[e]xpert testimony and discovery will help the Court" to make a determination regarding the standard of care. (Doc. 114 at 51.) Indeed, the Tenth Circuit explained that the "rule requiring expert testimony stems from the fact that medical malpractice actions often involve 'technical and specialized subject matter.'" *Holley*, 588 F. App'x at 795 (internal citations omitted). Plaintiffs have failed to provide an expert opinion regarding the standard of care applicable to a pharmacist who attends rounds with an ICU physician, with respect to the treatment of a staph infection and clostridium perfringens. (UMF ¶ 23.) Indeed, treatment of these infectious diseases involve "technical and specialized" knowledge. Likewise, it would require specialized knowledge regarding pharmacy practice and the ICU to assess the standard of care. It is not a matter of common knowledge whether a pharmacist who attends rounds at the ICU should know the antibiotics treatment that should be given to a patient with (1) staph aureus and (2) clostridium perfringens. Likewise, the average layperson would not know how long the patient should be administered IV antibiotics and oral antibiotics, respectively. Rather, this is a "technical and specialized" subject that requires expert opinion. *Id.* Plaintiffs, Dr. Wood, and Medical Doctors Associates did not serve any pharmacy expert opinion regarding the VAMC pharmacist "rounds" theory. (UMF ¶¶ 23-24.) Nor have they provided the opportunity to depose any purported expert witness. Therefore, Plaintiffs have not established the duty of care by a preponderance of the evidence.

   **B. The VAMC Pharmacist Who Attended Rounds at the ICU Did Not Breach the Standard of Care.**

Likewise, Plaintiffs have failed to offer an expert opinion to show how the VAMC pharmacist who attended rounds breached the duty of care. (UMF ¶ 23.) *See Holley*, 588 F.

App'x at 794-95; *Domann v. Vigil*, 261 F.3d 980, 984 (10th Cir. 2001) ("the Domanns failed to provide any expert medical testimony that the [medical treatment] was in any way negligent or a deviation from the standard of care"); *Thistlethwaite v. Elements Behavioral Health, Inc.*, No. 14-cv-0138, 2015 WL 11117306, at *7 (D.N.M. Apr. 2, 2015) (granting defendant's motion for summary judgment and finding that "the claim was actually a professional negligence claim which required expert testimony to provide evidence of a breach in the standard of care").

Rather, Plaintiffs' medical expert, Mark Looney, M.D. confirmed that the VAMC pharmacy did not breach the standard of care. During the hospitalization, the undisputed facts show that the VAMC properly treated Mr. Van Winkle with appropriate IV antibiotics. (UMF ¶ 7.) Dr. Looney testified that Dr. Wood's treatment during the hospitalization "was covering the staph." (Ex. A. at 50-51). In particular, Mr. Van Winkle received the following IV antibiotics during his hospitalization:

- On May 7-8, 2012, Mr. Van Winkle was treated with Piperacillin/Tazobact.
- On May 8, 2012 and from May 11-13, 2012, Mr. Van Winkle was treated with Cefazolin.
- From May 8-10, 2012, Mr. Van Winkle was treated with Cefepime.
- From May 10-11, 2012, Mr. Van Winkle was treated with Clindamycin.
- From May 11-13, 2012, Mr. Van Winkle was treated with Metronidazole.

(*Id.* at 150-62.)

Dr. Looney specifically testified that the VAMC's treatment of Mr. Van Winkle with "cefalozolin and metronidazole" was "good therapy." (*Id*. at 161.) He further testified, "If she was thinking MSSA sepsis, that's cefazolin, and clostridium perfringens, metronidazole. At this point it's – she's moving into the elegant category." (*Id.*) Because Dr. Wood's prescriptions of IV antibiotics were appropriate during Mr. Van Winkle's hospitalization, Alex Ward, the VAMC

11

Pharmacist who attended rounds with Dr. Wood from May 7-11, 2012, could not have breached the standard of care.

Plaintiffs and Defendants have alleged that the VAMC pharmacy should have corrected Dr. Wood's decision to prescribe oral antibiotics upon Mr. Van Winkle's discharge on May 13, 2012. (*See* Doc. 188.) Plaintiffs' pharmacist "rounds" theory is inapplicable to May 13, 2012, because the VAMC pharmacist who attended rounds was not working that day. (UMF ¶ 8.) Alex Ward, Pharm.D., who attended rounds with Dr. Wood in the ICU, was off duty on Sunday, May 13, 2012. (Ex. E at 150-51) (Q: "Okay, so on Sunday, May 13th when Mr. Van Winkle was discharged from the VAMC, were you working?" A: "It says, 'day off.'"). Alex Ward further explained that during the weekends, the VAMC pharmacists did not attend rounds at the ICU. (UMF ¶ 10); (*see* Ex. E at 164-65) (Q: "Well, would there be someone responsible and assigned to the MICU at the VA Medical Center on Saturdays and Sundays back in May of 2012?" A: "Based on my recollection of how the weekend staffing model went, the same model of clinical specialists rounding in the ICU like I did on Monday through Friday did not exist on Saturday and Sunday. . . . Specifically, there was no pharmacist assigned to be present at the MICU on rounds on the weekends.").

In summary, Plaintiffs cannot show a breach of the standard of care for the pharmacist "rounds" theory, because (1) Dr. Wood's treatment was appropriate on the days that Alex Ward, Pharm.D. was on rounds, and (2) the VAMC did not assign a VAMC pharmacist to be on rounds on the day that Mr. Van Winkle was discharged from the hospital.

### C.  Plaintiffs Have Identified No Expert Opinion or Evidence Show to Causation.

Plaintiffs have not offered the expert opinion of a pharmacy expert to establish causation with respect to the VAMC pharmacist "rounds" theory. (UMF ¶ 23.) Accordingly, Plaintiffs

cannot prove this element by a preponderance of the evidence. *See Holley*, 588 F. App'x at 794-95 ("Plaintiffs did not present any expert testimony that [defendant's] breach caused [plaintiff's] death. [Plaintiff's nursing expert] did not offer an opinion on causation"); *Dinkel*, 2011 WL 13118104, at *9 (D.N.M. Apr. 5, 2011) ("To avoid summary judgment, Plaintiff must come forward with facts from which [defendant's] negligent cause of the accident 'may be reasonably inferred.' . . . A burden rests upon Plaintiff to 'introduce evidence to remove the cause from the realm of speculation and to give it a solid foundation upon facts.'") (internal citations omitted). Plaintiffs, Dr. Wood, and Medical Doctors Associates have not provided expert opinion or evidence to show that the VAMC pharmacist who attended rounds with Dr. Wood caused Mr. Van Winkle's injury. (UMF ¶¶ 23-24.)

## II. PLAINTIFFS' "VAMC PROTOCOL" THEORY IS UNSUPPORTED BY EXPERT OPINION OR EVIDENCE.

As a backup theory, Plaintiffs seek to hold the United States liable for accurately filling a prescription as ordered by Dr. Wood. (Doc. 188.) Plaintiffs, Dr. Wood, and Medical Doctors Associates apparently claim that the pharmacist that approved and accurately filled the discharge prescriptions failed to follow a VAMC pharmacy protocol.[1] The United States is entitled to summary judgment as to these claims.

### A. Plaintiffs Have Not Established the Existence of a Duty of Care.

Plaintiffs have failed to offer an expert opinion to establish a duty of care for the VAMC pharmacy protocol theory. (UMF ¶ 23.) *See Holley*, 588 F. App'x at 794-95; *Holzem*, 311 P.3d at 1202; *Hudson*, 636 F. Supp. 2d at 831 ("Without any expert testimony regarding the standard

---

[1] Dr. Wood and Medical Doctors Associates have not asserted cross-claims against the United States. (*See* Docs. 46 and 47.) Accordingly, Defendants' assertion of any pharmacy theory cannot give rise to liability against the United States.

of care regarding the prescription of phenytoin for the treatment of seizure disorders, plaintiff cannot prevail on his claim."). Expert testimony regarding the standard of care is warranted, because assessment of pharmacy procedures and the treatment of infectious diseases, *i.e.*, staph aureus and clostridium perfringens, involves "technical and specialized subject matter.'" *Holley*, 588 F. App'x at 795.

Expert testimony is also required for a finding of a standard of care, because Plaintiffs' theory is apparently based on interpretation of VAMC protocols, which are also specialized pharmacy materials. *See id.* In addition, as explained in the United States' briefing in support of its Motion to Dismiss, (Docs. 167 and 208), the violation of a federal regulation, in itself, is not sufficient to give rise to a duty of care. *See Black Hills Aviation, Inc.*, 34 F.3d at 973. Rather, there must be "some other duty under the applicable state law," such that the United States will be liable "in the same manner and to the same extent as a private individual under like circumstances." *Klepper*, 825 F.2d at 1448. While Plaintiffs have argued that two New Mexico regulations are similar to an internal VAMC protocol, (Doc. 188), they have not supported such a theory with a pharmacy expert opinion. Moreover, under New Mexico law, violation of pharmacy regulations does not necessarily give rise to liability. *See Thompson v. Potter*, 2012-NMCA-014, *32, 268 P.3d 57, 66 (analyzing New Mexico pharmacy regulations and finding that "Plaintiff's [negligence *per se*] argument overlooks the fact that the majority of regulations are not sufficiently specific under New Mexico standards to support a negligence per se claim in the factual setting before us."). The provisions cited by Plaintiffs are not specific enough to give rise to liability under the same circumstances. Moreover, Plaintiffs have failed to substantiate such a negligence theory with evidence. (*See* Doc. 114 at 53) ("Expert testimony and discovery will help the Court to make this determination [regarding standard of care] at a later stage in this case.")

Accordingly, Plaintiffs have not met their burden in establishing a duty of care.  The dispute regarding VAMC pharmacy protocols involves "technical and specialized subject matter." *Holley*, 588 F. App'x at 794.  It is not a matter of common knowledge of a layperson whether a pharmacist who fills a discharge prescription should know the particular antibiotics treatment that should be given to a patient with staph aureus and clostridium perfringens.  This is particularly true where the pharmacy records generically refer to the Mr. Van Winkle's "infection," without identifying Dr. Wood's prior diagnosis of staph aureus and clostridium perfringens.  (*See* UMF ¶ 15; Ex. G.)  On that basis, Plaintiffs have failed to establish a standard of care by a preponderance of the evidence.

### B. Plaintiffs Have Not Established the Breach of a Duty of Care.

The VAMC protocol theory also fails, because Plaintiffs have not provided any expert opinion showing a breach of a duty of care.  (UMF ¶ 23.)  New Mexico law further requires a plaintiff to use expert testimony "in most medical malpractice suits" to assess "the [healthcare provider's] performance in light of the standard."  *Holley*, 588 F. App'x at 795; *see Domann*, 261 F.3d at 984 ("Under New Mexico law, in order to establish a deviation from the standard of care, medical expert testimony is required where the alleged negligence occurs within an area of knowledge in which laymen would be presumed uninformed").  *See* Doc. 114 at 53 ("Expert testimony and discovery will help the Court" to make a determination regarding duty of care).

Plaintiffs have not disclosed an expert who will testify that a pharmacist at Albuquerque VAMC should have known that the medication prescribed by violated the standard of care by "prescribing contraindicated drugs," as this Court suggested was necessary.  (UMF ¶ 23; Doc. 114 at 51-52.)  To the contrary, Plaintiffs' expert, Dr. Looney testified that it is not the pharmacist's "training or responsibility to adjudicate the clinical diagnosis."  (Ex. A at 112; UMF

¶¶ 21-22.)   Moreover, Dr. Wood testified that the VAMC pharmacy was not responsible for discharging Mr. Van Winkle on oral antibiotics.  (UMF ¶ 26; Ex. D at 56-57) (Q: "In May 2012, as far as you're aware[,] was the PA, nurse practitioner or the pharmacist responsible for Mr. Van Winkle being discharged on May 13?"  A: "No, they weren't."  Q: "Were any of them responsible for the – Mr. Van Winkle being prescribed oral antibiotics upon discharge?"  A: "No.").

Plaintiffs' failure to provide an expert opinion how the VAMC pharmacist's conduct fell below the standard of care is fatal to their claim.  (UMF ¶ 23.)   The standard of care under these circumstances does not fall within a lay person's common knowledge.  It would require specialized knowledge to assess whether the VAMC pharmacist's conduct complied with the standard of care.  Plaintiffs and Defendants are not claiming that the pharmacist failed to accurately fill the prescription as written by Dr. Wood.  (UMF ¶ 17.)  Rather, their theory is to the contrary—claiming that the pharmacist should have alerted Dr. Wood that the prescription she ordered was ineffective.  A lay person does not know a pharmacist's specialized training regarding infectious diseases.  Nor does the average person know the efficacy of certain antibiotics to treat different infections.  Moreover, it would require specialized training to assess the respective roles of the pharmacist and the doctor in determining proper medication of for the patient.

Plaintiffs have presented no evidence that the VAMC pharmacist breached the standard of care.  The VAMC pharmacy records establish that Amber Ramnarance-McKinley *accurately* filled Dr. Wood's discharge prescriptions, as requested.  (Ex. G.)  Moreover, the pharmacy records show that Dr. Wood prescribed oral antibiotics for an "infection," without specifying a diagnosis of (1) staph aureus or (2) clostridium perfringens.  (UMF ¶ 15; Ex. G.)  Moreover, the


pharmacy records include prescriptions for gauze and saline wash, for a wound with an "affected area."  (UMF ¶¶ 13-14; Ex. G.)  Based on the pharmacy records, the prescription for oral antibiotics could be reasonably interpreted as addressing a different "infection" than staph aureus or clostridium perfringens.  Accordingly, the pharmacy records do not explain Mr. Van Winkle's specific "infection," and there is no indication that Ms. Ramnarance-McKinley had actual knowledge of Mr. Van Winkle's staph infection.  (UMF ¶¶ 15-16.)  Therefore, it was appropriate for the VAMC pharmacy to fill the discharge prescription as Dr. Wood ordered.

### C. Plaintiffs Have Identified No Expert Opinion or Evidence to Show Causation.

Moreover, Plaintiffs have not served a pharmacy expert report to establish causation. (UMF ¶ 23.)  Accordingly, Plaintiffs have not proven this element by a preponderance of the evidence.  *See Holley*, 588 F. App'x at 794-95; *Dinkel*, 2011 WL 13118104, at *9.  This is a specialized area of medical knowledge, necessitating expert opinion.  Plaintiffs have not identified any evidence that Ms. Ramnarance-McKinley's conduct caused Mr. Van Winkle's injury.

### CONCLUSION

The Court should grant the United States' Motion for Partial Summary Judgment, because there is no genuine issue of material fact as to the VAMC pharmacy claims.  Plaintiffs' VAMC "rounds" theory fails, because it is unsupported by expert opinion.  Moreover, the undisputed facts show that Dr. Wood's prescriptions of IV antibiotics were appropriate for Mr. Van Winkle's condition on the days that the VAMC pharmacist attended rounds.  The "VAMC pharmacy protocol" theory is also fatally defective.  Plaintiffs has not provided an expert opinion to substantiate this claim.  Moreover, there is no indication that the pharmacist who filled the discharge prescription had actual knowledge of Mr. Van Winkle's staph infection.  Therefore,

pharmacy records include prescriptions for gauze and saline wash, for a wound with an "affected area."  (UMF ¶¶ 13-14; Ex. G.)  Based on the pharmacy records, the prescription for oral antibiotics could be reasonably interpreted as addressing a different "infection" than staph aureus or clostridium perfringens.  Accordingly, the pharmacy records do not explain Mr. Van Winkle's specific "infection," and there is no indication that Ms. Ramnarance-McKinley had actual knowledge of Mr. Van Winkle's staph infection.  (UMF ¶¶ 15-16.)  Therefore, it was appropriate for the VAMC pharmacy to fill the discharge prescription as Dr. Wood ordered.

### C. Plaintiffs Have Identified No Expert Opinion or Evidence to Show Causation.

Moreover, Plaintiffs have not served a pharmacy expert report to establish causation. (UMF ¶ 23.)  Accordingly, Plaintiffs have not proven this element by a preponderance of the evidence.  *See Holley*, 588 F. App'x at 794-95; *Dinkel*, 2011 WL 13118104, at *9.  This is a specialized area of medical knowledge, necessitating expert opinion.  Plaintiffs have not identified any evidence that Ms. Ramnarance-McKinley's conduct caused Mr. Van Winkle's injury.

### CONCLUSION

The Court should grant the United States' Motion for Partial Summary Judgment, because there is no genuine issue of material fact as to the VAMC pharmacy claims.  Plaintiffs' VAMC "rounds" theory fails, because it is unsupported by expert opinion.  Moreover, the undisputed facts show that Dr. Wood's prescriptions of IV antibiotics were appropriate for Mr. Van Winkle's condition on the days that the VAMC pharmacist attended rounds.  The "VAMC pharmacy protocol" theory is also fatally defective.  Plaintiffs has not provided an expert opinion to substantiate this claim.  Moreover, there is no indication that the pharmacist who filled the discharge prescription had actual knowledge of Mr. Van Winkle's staph infection.  Therefore,

the pharmacist acted properly when filling the prescription.

                                        Respectfully submitted,

                                        DAMON P. MARTINEZ
                                        United States Attorney

                                        */s/ Christopher F. Jeu*
                                        RUTH FUESS KEEGAN
                                        CHRISTOPHER F. JEU
                                        Assistant United States Attorneys
                                        P.O. Box 607
                                        Albuquerque, New Mexico 87103
                                        (505) 224-1458; Fax: (505) 346-7205
                                        Christopher.Jeu@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 19, 2016, I filed the foregoing pleading electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

    Doug Perrin:    dougperrin@perrinlaw.org

    Remo E. Gay, Jr.:    rgay@brownandgay.com

    Brendan O'Reilly:    boreilly@regapc.com

                                          *filed electronically 12/19/16*
                                          CHRISTOPHER F. JEU
                                          Assistant United States Attorney